Sydney F. Foster, J.
This is a claim against the State, based for the most part on damages alleged to have been caused by delay in the completion of a contract to build a new building at the New York State Training School for Boys at Groshen, New York. Claimant was the general construction contractor. There were several other prime contractors, including electrical and heating contractors. All the contracts were let June 27, 1960 and their completion date — April 1, 1962 — was the same in each instance. The electrical contractor and the heating contractor were, under the terms of their agreements, required to harmonize and install their work in conjunction with the work of other contractors, including of course the claimant. The State Architect had supervision of and direction over the work, *10 with appropriate authority to take whatever action might be necessary to insure proper execution of the entire work.
Claimant alleges, and has sought to prove, that the electrical contractor was guilty of gross delay in the performance of its work, and that the heating contractor also contributed to the delay. Claimant avers that such delay seriously impeded and held np the performance of its general construction work, And resulted in substantial damage.' The essence of its claim against the State is that the State had a duty to co-ordinate the work of the prime contractors, and that it failed to perform such duty.
Under the State Finance Law (§ 135) the State was obliged to divide the project into prime contracts for several phases of the work. Although this court intemperately criticized this arrangement as a potential breeder of discord, it was binding on the State as well as on the various contractors. Everyone concerned must be presumed to have known of this requirement and to have, acted in the light of it, and some delays must have been anticipated. However the State had a duty to regulate and co-ordinate with reasonable diligence the activities of the several prime contractors, for the simple reason, if no other, that no one else had the authority to so act. This general power was implemented by the State Architect’s standard construction specifications (arts. 12, 13, 14, 22, 26 and 28), which were inherent in every contract, and by various clauses in each agreement.
Formerly the contract clauses respecting delays barred a claim for damages for delay from any cause whatsoever, and the courts applied this language rather literally (Wright & Kremers v. State of New York, 238 App. Div. 260, 261, mod. 263 N. Y. 615; Endres Plumbing Corp. v. State of New York, 285 App. Div. 1107). In the present contract it is provided that no claim for damages shall be made by the contractor for any ordinary delays (art. 21, par. 90). We reach the conclusion therefore that if the State failed to exercise reasonable diligence to regulate and co-ordinate the activities of the several prime contractors, and that such failure resulted in extraordinary delay to the damage of the general construction contractor, the latter may recover from the State. The main issue in this case is whether claimant has made out a good claim under the foregoing principles.
There is proof to sustain a finding that both the electrical contractor and the heating contractor were laggard at times, and that the claimant complained on numerous occasions to the representatives of the State. The proof indicates however that such complaints were not ignored, and various job meetings were *11 held between the representatives of the State and the prime contractors, in an effort to iron out difficulties which had developed. In addition several meetings were held at the State Architect’s office for the same purpose, and various directives were issued in an effort to speed up the work. Claimant asserts that such efforts were futile and that the State ought to have imposed morí severe sanctions under the standard specifications against the electrical contractor and the heating contractor. We do not think the State was required to go that far. The matter was one for the exercise of judgment to be exercised by the representatives of the State who were in close touch with the progress of the werk. Obviously the application of a more severe sanction against one or more of the prime contractors, such as cancellation of a contract, might well have resulted in more delay than that already encountered. While it may not be of paramount importance, it is interesting to note that according to the weekly inspection reports of the State the general construction work was 96% completed on March 30, 1962; the electrical work was 89% completed on the same date and the heating contract 94% completed. And this was within a couple of days of the completion date fixed in each contract. Not a perfect record of course but one which dims somewhat the claim of extraordinary delay. We reach the conclusion that the State is not liable for whatever delay there was.
There is another reason for denying the bulk of the claim as presented after the proof was in. There is an item for increased cost of concrete work amounting to $46,097 and one for masonry work in the sum of $66,465. Here it should be observed that claimant sublet all the work to be performed under the terms of the general construction contract. The concrete work, plus some excavation and backfilling, was sublet to the Petrat Construction Company. Claimant’s bid for this work was $300,000. According to the allocation made by claimant the amount of the subcontract with Petrat was $254,750. After performing the subcontract in part Petrat abandoned it and claimant finished the concrete work with its own men, and the cost of such completion was $46,097. The masonry work was sublet to Jim Dio Guardi and Benjamin Green Construction Corporation for the sum of $160,000. These subcontractors performed part of this work and then defaulted. Claimant finished the work at a cost of $66,465.
The record does not contain sufficient justification for an award against the State as to these two items. None of these subcontractors was produced as witnesses. Why or when they defaulted has not been shown with any clarity or cogency. They *12 may have abandoned the work simply because they felt they had made bad bargains, but in any event their defaults cannot, on this record, be laid on the doorstep of the State.
By reason of the foregoing the items for the increased cost of concrete and masonry work, as well as the item under the head of general damages for delay (overhead, supervision, etc.), are rejected.
So far as the item for a back charge for temporary heat in the sum of $3,575 is concerned, we think such a back charge was improper. Claimant had a duty to supply temporary heat, and it did so after a fashion with gas facilities which the State deemed unsatisfactory. However that might be, the State failed to sustain by proper and cogent evidence the cost of temporary heat during the period it is alleged that the claimant failed to furnish the same. Claimant should have judgment for this back charge, erroneously deducted, and also for the rental value of claimant’s pump in the sum of $800.
The State has a counterclaim for damages in connection with a backfill around or adjacent to a swimming pool. Improper backfill, which it is said caused pipe breakage, is the basis of this counterclaim. There is a serious question as to whether or not this action is not barred by the so-called severance judgment entered June. 5,1963, but in any event we regard the evidence as insufficient to carry the burden of proof that rested upon the State to sustain such counterclaim. Accordingly the same is dismissed.
Let judgment be entered dismissing the claim except for the back charge item of $3,575 and the pump rental item of $800 for which judgment should be entered in favor of the claimant with appropriate interest, from the date of acceptance of the contract by the State, March 14, 1963, to date of entry of judgment, and let judgment be entered dismissing the State’s counterclaim.