FOREST ELECTRIC CORP., Claimant, *v.* STATE OF NEW YORK,
Defendant.   (Claim No. 43376.)

Court of Claims, December 6, 1966.

*Max E. Greenberg* and *Emmanuel Harris* for claimant.  *Louis
J. Lefkowitz, Attorney-General* (*Lawrence De Lucia* of counsel),
for defendant.

ALEXANDER DEL GIORNO, J.  This is a claim against the State
by the claimant which was one of seven prime contractors who
had bid on several specifications for the erection of the Reception
Building, known as Building No. 102, at the Bronx State Hos-
pital, Bronx County, New York.  The claimant was to furnish
labor and material for the electrical work.  Depot Construction
Corporation was the general construction contractor.  Other
contracts were for heating, sanitary work, refrigeration, elevator
work and food service equipment.

These contracts were entered into on May 12, 1959 and were
to terminate by December 1, 1961.  In all the contracts it was
provided that the work of each contractor was to harmonize and

be installed in conjunction with the work of the other contractors, especially the general construction contractor. The State Architect had supervision of and direction over the contract work as well as authority to bring about proper execution of the contract requirements, particularly work or job co-ordination, in order to insure unimpeded progress of the contract.

Claimant alleges that it performed all the terms of the contract; that its part of the contract was duly accepted by the State on or about December 20, 1963; that the State breached the said contract in that it unreasonably failed to co-ordinate the work of other contractors with the work of the claimant, permitted delays in the construction of walls, ceilings, painting, elevators, plastering, hanging ceilings, ceramic tiling, all of which were preliminary to claimant's work and, as a result, claimant's work was hampered and delayed.

The claimant further charges that the contract required the State to provide two hoists for material and one elevator for the workmen. The State, upon removal of hoists, provided only one elevator for hoisting men and materials, all of which caused claimant to expend additional sums of money for work, labor, material and equipment.

The proof indicates that the general contractor was quite indifferent to its obligation to properly man, supervise and co-ordinate its work and the facilities necessary for the smooth performance of the entire job which held up the work of the claimant and that the State was lackadaisical and indifferent to the many and continuing complaints of the claimant. As an example, concrete slabs for the structure were to be laid commencing February, 1960. They were not laid until the beginning of March, 1960, holding up the related work of all other contractors, including the claimant. Nevertheless, the claimant, by maximum effort and even overtime work, finished in time the work involved in that phase of the contract.

The general contractor used one superintendent for three separate jobs on the hospital site and intermingled its operations and men to the detriment of the job on which the claimant worked. The State permitted it to use one engineer for two hoists and also permitted removal of the two hoists when only one interior elevator was available and not at least two, as required by the contract. The brickwork was delayed, as well as the lathing, the plastering and the painting, the setting up of door bucks, ceiling work, and the affixing of cabinets.

Hoists were not made available to claimant to the extent required by the contract. Claimant had to store on the first floor over 4,000 fixtures because hoists or elevators were not available,

necessitating the use of a crane to lift the fixtures to the various floors, involving thus a double operation of equipment and manpower by the claimant.

The testimony indicated that there were various strikes during 1960 and 1961, which would affect the general operation of the general contract, but from all the evidence it would seem that had the general contractor been made to perform in timely fashion by the State, said general contractor would have been ahead of the several strikes in most instances, as claimed by the claimant. State's Finding No. 134 concedes claimant had performed 90% of its work by June 18, 1962. Although it is difficult to assess how much could have been thus gained or lost by virtue of the strikes, the court feels that no more than one quarter of the time lost could or should be assessed in favor of the State in regard to this claim. Likewise, since the claim for time lost waiting for hoists and rehandling of fixtures is an estimate, the court allows only for one half of the time claimed as a reasonable estimate of that time.

In general, by letters and intermittent oral complaints, the claimant drew the attention of the State to the delays caused by the general contractor, and the answer was almost always that the problem at hand was not a serious one, that the State could do nothing about these complaints, and that these were merely matters requiring jobsite co-ordination. Behind this " jobsite co-ordination," which is a built-in a prior protection, in such contracts the State seemed to take a cavalier, albeit benevolent, attitude towards the many requests of this claimant for use of its effective authority over this contract.

In all, only seven job co-ordination meetings were held on this job, which lasted from May, 1959 to December, 20, 1963 and, actually, to about May, 1964 because of many small items still to be completed after December 20, 1963.

The claimant's findings found by the court itemize these delays and complaints, which are to be deemed a part of this decision.

These specify the delays which impeded and held up the claimant's performance of the contract. The State had a duty to co-ordinate the entire job and failed to perform this duty.

The court would like to observe that section 135 of the State Finance Law, and any other statutory requirement, should be studied with the express purpose of either eliminating or amending the law to permit the State to let such contracts as this one to one bidder, instead of five, six, or more bidders, with none having authority over the others but all having the same privilege of screaming for help from the State Engineer on the job, whose own efficiency is diluted because too often he has to " mother "

the disputing contractors, rather than perform his primary duty of progressing the job. Experience would indicate that under the prevailing system the State squanders huge sums of money in trying to keep the jigsaw puzzle together, whereas, under the one bid system, the responsibility of efficiency and co-ordination would not only be upon the one contractor but it would be to said contractor's financial advantage to move with co-ordination, efficiency and due speed to complete the contract, for the basic reason that the contractor could not place upon the shoulders of others, but only upon himself, any blame for a slowdown or unco-ordinated work. Were this the case, then the State's Engineer would essentially only be called upon to watch the proficiency of the work and not to arbitrate either arguments or unco-operation among many contractors.

An example of the illogical and desultory action taken by the State Architect who depended for his information on the State Engineer on the job is the following letter (claimant's Exhibit 21):

August 23, 1962
32404

Bronx State Hospital
Reception Building #102
Specification 15091 E

Forest Electric Corp.
630 Ninth Avenue
New York 36, N. Y.

Gentlemen:

For the purpose of record and the information of all concerned, this office repeats herewith your August 22, 1962 letter:

"We call your attention to the following job conditions:

"No elevators are in operation. The lighting fixtures will have to be carried up to the various floors.

"The ceilings are not painted throughout the floors. Rooms are skipped. We cannot hang fixtures in one room, then move to another floor without completing a given area.

"You will agree with us that in order to perform this work in an efficient manner, we have to do an entire floor.

"We intend to proceed with the hanging of the fluorescent fixtures in an efficient manner and not be hampered by the inefficiency of the General Contractor.

"We also request that steps be taken to provide ample elevator service as called for in the specifications."

The foregoing matter was discussed today with our Local Representative and it is understood that the problem at hand is not a serious one. Would suggest, based on past experience, that all concerned should meet at the jobsite and settle the matter on a mutually agreeable basis in accordance with the terms of the applicable contracts.

Very truly yours,
/s/ C. W. Larson
CARL W. LARSON
State Architect

The court finds that the delays complained of, except for the portion indicated above to have been affected by the strikes, were not ordinary but extraordinary delays for which the State is liable, the damages for which will be reflected in the court's decision issued simultaneously with this memorandum decision.