(July 23, 1968)

Forest Electric Corporation, Respondent, v. State of New York, Appellant. (Claim No. 43376.) — Gibson, P. J. Appeal by the State from a judgment of the Court of Claims which awarded damages for breaches by the State of its contract with claimant for the performance by claimant of electrical

work in connection with the construction of a building at Bronx State Hospital; the breaches found being (1) the State's failure to co-ordinate the performance, and enforce the timely progress of the work of the various contractors, in particular that of the contractor for general construction, and (2) the State's failure to require the general construction contractor to comply with the contract requirements to provide elevators and hoists for claimant's workmen and materials; the State's breach in each case resulting in extraordinary delay causative of hindrance, loss and damage to claimant in the performance of its work. The State does not dispute the amount of either award, resting its appeal on its denial of actionable responsibility for any of the delays proven. We first consider the cause of action predicated on delay. In accordance with section 135 of the State Finance Law, the State made separate contracts with claimant and six other contractors for the separate and different types of work required, these latter being for general construction, heating, sanitary work, refrigeration, elevator work and food service equipment. The contract date was May 12, 1959 and the completion date was December 31, 1961 for all of the contracts, but the work was not accepted until December 20, 1963. Claimant had performed 90% of its work by June 18, 1962. The State would attribute the delay in large part to various industrial strikes in 1960 and 1961 but the trial court found strikes responsible for no more than 25% of the delay and consequent damage and in its award gave effect to that finding. The State concedes that, under the terms of the contract and the specifications, there existed an obligation requiring the State to co-ordinate the work; that there was also created an obligation on the part of the separate contractors to co-ordinate and connect their work; and that the State's responsibility was to attempt to keep the work of all the contractors progressing, so that no contractor would be damaged as a result of delays caused by another. Actionable delay must be more than "ordinary" delay, under section 90 of the State Architect's Standard Mechanical Specifications of November 1, 1955, made part of the contract documents, providing: "90. No charges or claim for damages shall be made by the Contractor for any ordinary delays or hindrances, from any cause whatsoever, during the progress of any portion of the work embraced in this contract. Such delays or hindrances shall be compensated for by an extension of time as above provided." Concededly, claimant frequently complained to the State of delays on the part of the general contractor hindering claimant's work; and although the State's engineer testified that he met daily with all of the contractors to hear their complaints, he said that to effect the necessary co-ordination he held joint meetings with the prime contractors on but seven occasions during these years, and his brief testimony as to these meetings is so completely generalized and so devoid of any specifics as to afford no indication of any hard effort or anything more than discussions; the subject "generally was the work that the [general construction] contractor anticipated doing in the future". The question thus became, not what the State's representatives might have done or could have done, or whether, as the State contends, the omission to enforce or threaten penalties or sanctions was purely a matter of judgment for which the State is not answerable to claimant; but, whether, in this case, the State made any serious and substantial effort to progress and co-ordinate the work. Certainly, it would seem incumbent upon the State, once there had been shown a delay of two years in the performance of a two-year contract, to demonstrate pressure or effort of some kind more substantial and sustained than the infrequent discussions to which the engineer *testified*. The decision with respect to the cause of action based on untoward delay was purely factual and is sustained by the evidence. Similarly, the State's failure to adequately enforce the general construction contractor's obligation to supply hoists and elevators, to the extent provided by his contract, was fully

demonstrated, as was claimant's resultant damage. Judgment affirmed, with costs to respondent. Gibson, P. J., Reynolds, Aulisi and Staley, Jr., JJ., concur in memorandum by Gibson, P. J.; Herlihy, J., dissents in part and votes to modify in the following memorandum. Herlihy, J. (dissenting in part). While the factual issues in each case are to some degree different, I am not convinced that the present record justified the substantial award against the State of New York. (See *Tippetts-Abett-McCarthy-Stratton* v. *New York State Thruway Auth.*, 18 A D 2d 402, 404-405, affd. 13 N Y 2d 1091; *Websco Constr. Corp.* v. *State of New York*, 57 Misc 2d 9.) While the State is not liable for breach of contract since its failure to take reasonable steps to properly co-ordinate the work of the prime contractors has not been established, the record does support the conclusion that the claimant incurred significant additional expense through no fault of its own in the amount of $7,749.73. Accordingly, I would modify the judgment by reducing the amount thereof to $7,749.73 and, as modified, affirm. [52 Misc 2d 215.]