SYRACUSE INTERCEPTING SEWER BOARD, Respondent, *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant.

(Argued December 1, 1930; decided January 6, 1931.)

*Frank H. Hiscock* for appellant.  Plaintiff was bound to furnish the contractor with a right of way which was necessary for the completion of its contract and whether the contractor was unable to complete its contract by reason of plaintiff's failure to furnish such right of way was a question of fact for the jury, and the trial court's refusal to so hold was error.  Plaintiff could not declare an abandonment by the contractor when the failure of the latter to proceed was due to some default of the plaintiff and when it failed to furnish necessary access to the creek it could not insist that the contractor should incur liability as a trespasser on the agreement of plaintiff that it would indemnify it against liability damages.  (*Fulton L., H. & P. Co.* v. *State of New York.*, 200 N. Y. 400; *Mott* v. *Mott*, 68 N. Y. 246; *Van Winkle* v. *Van Winkle*, 184 N. Y. 193; *Dolan* v. *Rodgers*, 149 N. Y. 489; *Traynor* v. *Mutaugh*, 10 App. Div. 627; 159 N. Y. 545; *Porter* v. *Blair*, 83 Fed. Rep. 104; *French* v. *City of Syracuse*, 18 Misc. Rep. 278; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *Mains* v. *City of New York*, 30 Misc. Rep. 384; *Allamon* v. *Mayor of Albany*, 43 Barb. 33; *City of New York* v. *Continental Asphalt Co.*, 218 N. Y. 685.)  The action of plaintiff in rejecting the bid of the lowest bidder for the completion of the work left unfinished by the contractor and in awarding the contract to another bidder, whose bid was higher, was absolutely

illegal, and incompetent evidence was received by the court in the attempt to sustain this action. This illegality bars a recovery against the surety. (*Dickinson* v. *City of Poughkeepsie*, 75 N. Y. 65; *People* v. *Gleason*, 121 N. Y. 631; *McDonald* v. *Mayor*, 68 N. Y. 23; *Braddy* v. *Mayor*, 20 N. Y. 312; *Malloy* v. *City of New Rochelle*, 198 N. Y. 402.)

*Frank P. Malpass, Corporation Counsel* (*James C. Tormey* and *A. M. Beach* of counsel), for respondent. The contractor unreasonably and wrongfully delayed and subsequently abandoned work on its contract, without cause or justification and the plaintiff in formally declaring the contract abandoned acted rightfully and within the provisions of the contract pertaining thereto. (*Powers* v. *City of Yonkers*, 114 N. Y. 145; *Hogeboom, Inc.*, v. *State of New York*, 124 Misc. Rep. 559; *O'Donnell* v. *City of Syracuse*, 184 N. Y. 1; *Loomis* v. *Canal Appraisers*, 33 N. Y. 461; *Danes* v. *State*, 219 N. Y. 67; *St. Paul & Pac. R. R. Co.* v. *Schurmeir*, 74 U. S. 272; *Fulton Light, Heat & Power Co.* v. *New York*, 200 N. Y. 400; *Mack* v. *State*, 122 Misc. Rep. 86; 211 App. Div. 825; *Barr & Co.* v. *New York*, 127 Misc. Rep. 75; *People* v. *Karr*, 240 N. Y. 348; *People* v. *Rockwood*, 126 Misc. Rep. 544; McQuillan on Municipal Corp. [2d ed.] § 2075; *Mains* v. *City of New York*, 30 Misc. Rep. 384; 52 App. Div. 343; 166 N. Y. 618.) The plaintiff in rejecting the lowest bid was in the exercise of a discretionary act, judicial in its nature and such act is not, in the absence of fraud, reviewable by the courts. (McQuillan on Municipal Corporations [2d ed.], § 1330; *Irving* v. *Mayor*, 131 N. Y. 133; *East River Gas Light Co.* v. *Donnelly*, 93 N. Y. 557; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Gilmore* v. *City of Utica*, 131 N. Y. 26; *Martens & Co.* v. *City of Syracuse*, 183 App. Div. 622; *People ex rel. Belden* v. *Contracting Board*, 27 N. Y. 378; *Haecker Co.* v. *City of Buffalo*, 176 N. Y. Supp. 642; *Matter of City of New York*, 217 N. Y. 45; *Campbell* v. *City of New York*, 244 N. Y. 317;

*McCutcheon* v. *Terminal Station Comm.*, 217 N. Y. 127, *Adams* v. *Ives*, 63 N. Y. 650; *Matter of Marsh*, 83 N. Y. 431.) The supplemental agreement made in completing the contract which the original contractor had abandoned was authorized and made pursuant to the terms and provisions thereof to which defendant must be deemed to have consented. Moreover, the change provided for therein was a mere change in detail and such change actually lessened the cost of completion and defendant was properly held liable therefor. (*Garrison* v. *Crenshaw Co.*, 198 App. Div. 1020; *United States* v. *American Surety Co.*, 200 U. S. 197; *Matter of Leeds*, 53 N. Y. 400; *Fleming* v. *Village of Suspension Bridge*, 92 N. Y. 368; *Smith* v. *Molleson*, 148 N. Y. 241; *Elmohar Co.* v. *Peoples Surety Co.*, 217 N. Y. 289; *Newark* v. *Leary Const. Co.*, 118 Misc. Rep. 622; *Middleton* v. *Ætna Ind. Co.*, 121 App. Div. 589; *Zimmerman* v. *Jourgensen*, 70 Hun, 222; 144 N. Y. 656; *Riviera Realty Co.* v. *Illinois Surety Co.*, 165 App. Div. 114; *United States* v. *McMullen*, 222 U. S. 460; *McKegney* v. *Illinois Surety Co.*, 180 App. Div. 507.)

CRANE, J. The Fidelity and Deposit Company of Maryland gave a $50,000 bond to insure the faithful performance of a contract which the Alto Construction Company made with the Syracuse Intercepting Sewer Board to finish and complete the improvement of Onondaga creek, in the city of Syracuse. By chapter 2 of the Laws of 1798, p. 296, re-enacted by chapter 186 of the Laws of 1801, section 34, and chapter 47 of the Revised Laws of 1813 (Vol. 2, p. 285), Onondaga creek was declared to be a public highway. The Syracuse Intercepting Sewer Board was created by chapter 356 of the Laws of 1907, with power to regulate and improve the channels of Onondaga creek and Harbor brook to an extent necessary for the operation of its sewer systems. The right was given to it of entering upon and using any public street, road or highway for the purpose of constructing such

sewers, the streets to be restored after the improvement had been made. Shortly after its creation, and in 1909, the board entered into a contract, known as contract No. 8, with one Nicholas D. Pound. A later contract was made with the Alto Construction Company on June 18, 1913, known as contract No. 20, to complete the original contract No. 8, which had been unfinished by Pound and others. The work called for by the contract extended for two and one-half miles, a mile of which the Alto Construction Company had constructed up to January 17, 1914, when it closed down work. With the coming of the spring and summer of 1914, the board made repeated demands upon the company to proceed with the work, as its time limit was twenty months from June, 1913. The company, claiming that it could not gain possession of certain rights of way, notified the plaintiff by letter, August 14, 1914, that it ceased work under the contract. On September second the plaintiff passed a resolution, formally declaring the contract abandoned and proceeded to call for bids for the unfinished work. John Young, of Syracuse, bid $167,770; was awarded the contract, and completed the improvement. The excess cost of completing the work over and above the price fixed in the contract with the Alto Construction Company is the amount demanded in this action from the Fidelity Deposit Company of Maryland, which had given the bond for faithful performance by the contractor.

The judgment recovered by the plaintiff is here challenged on two grounds: *First*, that there was a question of fact as to the justifiable abandonment by the Alto Construction Company; *second*, that the unfinished work was not relet to the lowest bidder or, at least, this also should have been left to the jury as a question of fact. The trial judge virtually directed a verdict for the plaintiff upon these two points, and left to the jury solely the question of damage. As to this, the amount was also challenged in a particular to be hereafter mentioned.

What is the right of way about which the Alto Construction Company complained? The corporation counsel in reply to the company's letter of August 14, above mentioned, hastened to assure the Alto Construction Company that the city of Syracuse owned the right of way over which the contract extended, and would defend all actions or proceedings which might be brought against the contractor and would save it harmless. We can find nothing in the record which questions the right of Syracuse or the plaintiff Board to improve or work Onondaga creek for a sewer system. In fact, the evidence shows that the right of way mentioned or referred to by the contractor consisted of rights or privileges over land adjoining the banks of the creek. We gather that the contractor may have thought that it could use these lands in the progress of the work. There is nothing in the contract to so indicate. That he could approach the creek from the streets and highways is evident, but the necessity for the use of the adjacent land is not explained in the evidence. Two persons owning property to the edge of the creek objected to the contractor cutting some trees and taking dirt for the construction of a dam. Again, the contract is silent as to any such right. Whatever may have been assumed by counsel upon the trial of the case, the record before us fails to explain or refer to any right of way except that in the creek itself, which was the subject of contract. The fact that the persons who objected to the contractor coming onto their property were located half a mile or more above the point to which the work had progressed, and that for the mile of work finished by the Alto Company, and the mile and a half completed by Young, there was no trouble with adjoining owners, indicates that the difficulties were more imagined than real. The trial court would not have been justified in submitting the right to terminate the contract to the jury.

As to the second point, there were very good reasons

expressed at the time to the board by the engineers why the lowest bid of Merrill-Ruckgaber Co., New York city, should not have been taken. The Board, before rejecting this bid, inquired very carefully about this company, and ascertained that neither as to finances nor equipment was it able to carry out this improvement. In the exercise of this sound judgment, sharpened by experience with other contractors upon this same No. 8 contract, the board was justified in seeking a bidder who could give reasonable assurance of fulfilling his obligations. We do not mean to say that the evidence shows that the Merrill-Ruckgaber Co. could not have performed the contract; what we do mean, however, is that the evidence shows that the Board acted in good faith and had reason to doubt that company's ability to perform. Chapter 356 of the Laws of 1907 empowers the plaintiff to let contracts to the " lowest responsible bidder." Information furnished by Bradstreet, Dun and the Maryland Casualty Company was unsatisfactory. The company refused to furnish any financial statement, depending upon borrowed funds to proceed with the work. The Board was charged with the duty of selecting a responsible bidder, and this called for honest judgment and discretion. We think that the Board in this particular performed its duty. Again, no question here to go to the jury.

When we come to the question of damage, however, there is an item which needs some examination. The Alto Construction Company and its surety were liable for the excess cost of completing the contract as made. The plaintiff cannot charge to the contractor the excess costs of changes and alterations in that contract. Exhibit 99 is a supplemental agreement made the 12th day of May, 1915, with John Young, the contractor, allowing him to use solid monolithic concrete in place of concrete blocks, where the contract required them, in constructing slope walls and the invert or bed of the creek. Prices were fixed at $10.52 a cubic yard for the concrete laid in

place of blocks in the slope walls, and $10.70 per cubic yard for concrete laid in place of blocks in the invert. In other words, the main contract called for concrete blocks; Alto's bid and contract for these was $8 per cubic yard. Young's bid and contract was $11, but this latter contract was changed by the supplemental contract. Solid monolithic concrete was substituted. Both Alto and Young had agreed in their main contracts to furnish solid concrete at $10 a cubic yard. It is true that this solid concrete was furnished in place of the more expensive concrete blocks, but when solid concrete was the substitute, it should have been taken at $10 a cubic yard, as called for by the contract of both parties. Anyhow, the Alto Construction Company was never afforded the opportunity of agreeing to do the substituted work for $10 a cubic yard. If the change were to be made, the increased cost of the concrete, by reason of forms or place, should not be charged up to the contractor when he had no opportunity to bid on it at the same unit figure as before. We appreciate that the Board's engineer tried to explain the reason for this increased cost of solid concrete, and also that the concrete was cheaper than the solid blocks, but the fact is that solid concrete work has been done for $10.52 and $10.70 a cubic yard, for which the contractors for that class of material, if not for place, agreed to charge $10. The Alto Company might have been willing to accept the change for this figure. It was more than it had bid for blocks.

Moreover, in examining the contract we find these provisions: The approximate quantities as the basis for the bid was concrete, laid in place, Class A, 4,053 cubic yards, and concrete blocks laid dry, Class B, 8,572 cubic yards.

By article XII of the original contract, the Board expressly reserved the right to increase or diminish the above-mentioned quantities, or any of them, as may be deemed necessary by its chief engineer; and the con-

tractor agreed to make no claim for anticipated profits, or for loss of profits, because of a difference between quantities of the various classes of work actually done or materials actually delivered, and the estimated quantities stated in the information for bidders.

By article XXVI, item 7, For Concrete Laid in Place, Class A, including the furnishing and placing of all materials and all work incidental thereto, the sum of ten dollars per cubic yard; item 8, For Concrete Blocks Laid Dry, Class B, including the furnishing of all materials and all work incidental thereto, the sum of eight dollars per cubic yard.

Class A refers to concrete laid in place according to the drawings for invert and slope walls and " elsewhere as required."

Class B refers to concrete blocks laid dry which shall be used for protecting the invert and side slopes as braces of the deepened channel and elsewhere as required. It provides as to the material of which these blocks shall be made and as to their manufacture.

Class A and Class B do not designate particular places for the concrete or the blocks; rather they refer to the class of concrete and the class of blocks to be used when such is required by the plans and specifications. The inference may be fairly drawn that where concrete has been substituted for blocks it is to be paid for under these various provisions at ten dollars per cubic yard.

Under the circumstances of this case we are of the mind that the increase, $1,753.70 in the one instance, and $2,059.32 in the other, must be deducted from the recovery. This is a total of $3,813.02, interest to be adjusted accordingly.

The judgment should be modified in accordance with this opinion and as modified affirmed, without costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; HUBBS, J., not sitting.

Judgment accordingly.