Paul D. Graves, J.
This is a proceeding under article 78 of the CPLB, brought on by order to show cause, for an order directing the respondent, Massena Housing Authority, to rescind its determination, awarding a bid to respondent Stirling Homex Corporation for the construction of 50 low-income housing units or in the alternative to award the contract to the petitioner as the lowest responsible bidder.
The Massena Housing Authority, having received prior approval from the Village of Massena, determined to complete a low cost housing project by inviting developers or builders to submit proposals for the erection of 50 low-income housing units. Financing was to be through Federal aid from the United States Department of Housing and Urban Development. The proposals were based ón a so-called “ turn-key ” contract, which in this case, involved the Authority providing land deemed to be in excess of its needs for a stated amount and contracting to repurchase the land after the dwelling units were constructed and made ready for occupancy according to specifications set forth by the Authority.
After advertising five proposals were received April 21, 1970 by the Massena Housing Authority for this project. These ranged from a high proposal submitted by respondent Stirling Homex Corporation of $1,072,515 to a low bid of petitioners for $825,000. A subcommittee was created by the Housing Authority, and as the result of its recommendations, the Authority directed the five proposers to resubmit their proposals incorporating further specifications. On May 28, 1970, four of the developers resubmitted their proposals. The proposals received were as follows:
*107 North Country Development Corporation
(petitioner) ................................$ 930,000
Factory Automated Systems from Pennsylvania.. $ 986,095 Fournier Development Corporation.............$1,039,039
Stirling Homex Corporation (respondent)....... $1,039,215
On June 3, 1970, after reviewing the proposals and hearing representatives from the four developers, the Authority by unanimous secret ballot or vote determined to recommend to the United States Department of Housing and Urban Development acceptance of the proposal made by respondent, Stirling Homex Corporation, which had submitted the highest proposal, and was $109,215 over the low proposal submitted by petitioner.
The reasons assigned by the Authority in their answer for recommending respondent Stirling Homex were stated to be based upon the ability of said respondent to complete the project prior to the winter of 1970; that the statements made by the other developers were, in effect, they could not provide a definite completion date whereas respondent guaranteed completion within 60 working days; and further, the Authority considered its prior favorable experience with respondent developer.
The answer and arguments by respondent raise several defenses, which probably should be disposed of before considering the merits. The first defense contained in respondent Stirling Homex’ answer is that the order to show cause was not timely served, since such order required service by certified mail, return receipt requested, on or before June 6, 1970; that the papers were not served upon this respondent until June 8, 1970. Whether such service was timely made or not is of little concern since this respondent did file an answer containing denials to many of the allegations of the petition and has had full opportunity to argue the matter and submit briefs directed to the merits, and therefore has waived any objection it might have on the grounds of inadequacy of notice. (Cf. Schoenberg v. State of New York, 206 Misc. 493; Matter of Glasser, 180 Misc. 311.)
Respondent Stirling Homex’ second defense that the petition is legally insufficient in failing to allege a cause of action against respondent is likewise without merit. This respondent was properly made a party as the successful bidder in this proceeding, and in fact, it is probably a necessary party. (Matter of Cestone Bros. v. Solowinski, 276 App. Div. 970; Matter of Wiltom Coach Co. v. Central High School, Dist. No. 3, 36 Misc 2d 637.)
*108 Respondents also contend petitioner did not comply with section 157 of the Public Housing Law. Subdivision 1 of this section provides: “ In every action or special proceeding, for any cause whatsoever, prosecuted or maintained against an authority, the complaint or necessary moving papers shall contain am allegation that at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the authority for adjustment and that it has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.”
In the court’s opinion, this section does not apply to this present article 78 proceeding. The quoted séction refers to “ adjustment ” or “ payment ” which would apply in actions where damages are claimed for tort or breach of contract. Even if requested, damages to petitioner could not be awarded since there is no contractual relationship between petitioner and the Authority by the mere submission of a proposal or low bid. (Molloy v. City of New Rochelle, 198 N. Y. 402.) An article 78 proceeding is sanctioned by an unsuccessful bidder to insure enforcement of applicable statutes. (Matter of Dictaphone Corp. v. O’Leary, 287 N. Y. 491; Matter of Allen v. Eberling, 24 A D 2d 594.) If required to wait 30 days before pursuing relief hereunder, it is possible petitioner would find itself without legal remedy since a. contract could be awarded and the work commenced or partly .completed in the interim. (See Matter of Carrol-Ratner Corp. v. City Manager of New Rochelle, 54 Misc 2d 625; Matter of General Steel Prods. Corp. v. City of New York, 18 Misc 2d 106.)
Respondents argue the special proceeding herein was prematurely commenced (CPLR 7801, subd. 1), since the recommendation of :'kn award,..to. respondent Stirling Homes was subject to approval of-the United- States Department of Housing and Urban Development. However, it does not appear any other than the one proposal recommended would be forwarded for approval, or that petitioner would be given an opportunity to contest the recommendation before the United States Department of Housing and Urban Development. Therefore, in the court’s opinioh, the proceeding was not premature, and; as,stated above, any delay in instituting the proceeding might result in leaving petitioner without a remedy.
Thus disposing of all preliminary matters contained in the defenses worthy of comment, the court now reaches the main issues posed by the pleadings. The petition alleges respondent, Massena Housing Authority, failed to comply with subdivision 3 *109 of section 220 of the Labor Law; and that also the bids received did not contain a statement of noncollusion as required by section 151 of the Public Housing Law (see, also, General Municipal Law, § 103, subd. 7). Subdivision 3 of section 220 is applicable to the Municipal Housing Law under section 152 of the Public Housing Law. This provides in part: ‘ ‘ All contracts of an authority involving the employment, among others, of laborers, workmen, or mechanics shall be in conformity with the provisions of article eight of the labor law, and such provisions shall be deemed terms of all such contracts; and for the purpose of obtaining the prevailing rate of wages or fees for such contracts, the authority shall proceed in the same manner as the municipality in which the authority operates.”
Subdivision 3 of section 220 provides for the appropriate fiscal officer ‘ ‘ to ascertain and determine the schedules of supplements to be provided and wages to be paid workmen, laborers and mechanics on * * * public work, prior to the time of the advertisement for bids, and such schedules shall be annexed to and form a part of the specifications for the work.”
Subdivision 5 of section 151 of the Public Housing Law provides, in part:
“ (a) Every bid or proposal hereafter made to a municipal housing authority where competitive bidding is required by statute, rule or regulation, for work or services performed or to be performed or goods sold or to be sold shall contain the following statement subscribed by the bidder and affirmed by such bidder as true under the penalties of perjury: Non-collusive bidding certification.
“ (1) By submission of this bid, each bidder and each person signing on behalf of any bidder certifies, and in the case of a joint bid each party thereto certifies as to its own organization, under penalty of perjury, that to the best of his knowledge and belief:
“ (i)The prices in this bid have been arrived at independently without collusion, consultation, communication, or agreement, for the purpose of restricting competition, as to any matter relating to such prices with any other bidder or with any competitor;
“ (ii) Hnless otherwise required by law, the prices which have been quoted in this bid have not been knowingly disclosed by the bidder and will not knowingly be disclosed by the bidder prior to opening, directly or indirectly, to any other bidder or to any competitor; and
“ (iii) No attempt has been made or will be made by the bidder to induce any other person, partnership or corporation to *110 submit or not to submit a bid for the purpose of restricting competition.
“ (2) A bid shall not be considered for award nor shall any award be made where (1) (ii) and (iii) above have not been complied with ”.
In addition, petitioner asserted in its argument and in its brief that section 151-a of the Public Housing Law is applicable, and that there was no compliance therewith. This section provides, insofar as applicable, as follows: “ 1. Notwithstanding, any inconsistent provision of this chapter or any other general, special or local law, any authority or municipality, or any officer, board, department, commission or other agency thereof charged with the duty of preparing specifications or awarding or entering into contracts involving the erection, construction, reconstruction or alteration of any building or other appurtenance as a part of or in connection with a project or any part thereof in any part of the state under or pursuant to the authority of this chapter, when the entire cost of such work shall exceed fifty thousand dollars, must have prepared separate specifications for the following three subdivisions of the work to be performed:
“ a. Plumbing and gas fitting;
‘ ‘ b. Steam heating, hot water heating, ventilating and air conditioning apparatus; and ‘ ‘ c. Electric wiring and standard illuminating fixtures.
“ 2. Such specifications must be so drawn as to permit separate and independent bidding upon each of the above three subdivisions of work. All contracts hereafter awarded by any such authority or municipality, or any officer, board, department, commission or other agency thereof, involving the erection, construction, reconstruction or alteration of any building as a part of or in connection with any project under or pursuant to this chapter, shall award the three subdivisions of the above specified work separately to responsible and reliable persons, firms or corporations engaged in such classes of work.”
There is no attempt by respondents to show compliance with the mandate of these statutes. However, respondent Authority seems to set forth as one- of its defenses the argument that, since the action it took complied with the rules and procedures set forth by the United States Department of Housing and Urban Development, it is not required to comply with the New York State Public Housing Law.
The Massena Housing Authority was created by a special act of the Legislature and its powers are set forth in section 435 of the Public Housing Law. This provides: “ A municipal housing authority, to be known as the Massena Housing Authority is *111 hereby created and established for the incorporated village of Massena in the county of St. Lawrence for the accomplishment of any or all of the purposes specified in article eighteen of the constitution of the state of New York. It shall constitute a body corporate and politic, be perpetual of duration and consist ol' five members. It shall have the powers and duties now or hereafter conferred by this chapter upon municipal housing authorities. It shall be organized in the manner prescribed by and subject to the provisions of this chapter, and the authority, its members, officers and employees and its operations and activities shall in all respects be governed by the provisions of this chapter.”
Thus in its very creation the Massena Housing Authority is restricted in its powers and made subject to the Public Housing Law. The Legislature in various parts of the Public Housing Law recognized and differentiated between Federal projects financed, in whole or in part, by the Federal Government and State or municipal projects (Public Housing Law, § 3, subds. 14, IS).
Thus section 40 of the Public Housing Law states: ‘ ‘ An authority is empowered to include in agreements with the federal government provisions that such government shall have the right to supervise and approve the construction, maintenance and operation of any project to which such government may render any assistance, and subject to the restrictions contained in this chapter, any other terms, covenants and provisions which the authority may deem necessary or appropriate. ’ ’
It is apparent therefore that, unless specific sections of the Public Housing Law exclude Federal projects from its terms, or sections thereof apply only to State loans or municipal projects, the general provisions and restrictions are applicable even though Federal funds only are involved.
A Housing Authority is a ‘1 public corporation” and its powers must be exercised in accordance with the Public Housing Law. (Brown v. Mt. Vernon Housing Auth., 279 App. Div. 794.)
Respondents, however, argue that sections 151, 151-a and 152 of the Public Housing Law are not applicable to this project because of the form or manner which it has chosen to provide low-cost housing with Federal assistance. In other words, it is their argument that this is not a construction contract, but rather, under the so-called 1 ‘ turn-key ’ ’ method, the Authority is only entering into a contract with a private developer-builder to repurchase the land when the improvements are completed *112 at an agreed price for the completed product in accordance with the agreed specifications.
Section 151 of the Public Housing Law provides, in part: “ Contracts of an authority for demolition, excavation, construction, alteration, renovation or for purchase of materials or supplies shall be in such form and contain such combination of work or trades and such terms and provisions as may be deemed advisable by the authority. All such contracts in excess of ten thousand dollars shall be made on sealed bids ”. Nevertheless, respondents’ argument continues to the effect, since municipal housing authorities are given the power to “ acquire or contract to acquire from any persons, firm, corporation or government, by subsidy, contribution, gift, grant, bequest, devise, purchase, condemnation or otherwise, real or personal property, or any interest therein ” (Public Housing Law, § 37, subd. [m]) without restriction as to requiring bids that, under the Federal ‘ ‘ turn-key ’ ’ method, it is free to ignore the requirements of the Public Housing Law.
The court feels that such argument is without merit. It goes without saying that the purpose of such statutes as section 151 and 151-a of the Public Housing Law is designed to promote the public interest and economy and prevent favortism in the procurement of work and supplies. (See, e.g., Brady v. Mayor of City of New York, 20 N. Y. 312; People ex rel. Coughlin v. Gleason, 121 N. Y. 631; Gerzof v. Sweeney, 16 N Y 2d 206; see, also, Matter of General Bldg. Contrs. of N. Y. State v. County of Oneida, 54 Misc 2d 260.) Any attempt to circumvent the requirement for sealed proposals or bids on construction contracts, no matter how well intended, cannot be looked on with favor by this court. Whether this project involved a straight construction contract or the so-called ‘ ‘ turn-key ’ ’ procedure, the result is the same, and the statutes for the protection of the taxpayers should be strictly followed; and this regardless of whether the project is financed through the Federal Government, State Government or by local taxes.
It appears in the present case that the Authority did require sealed proposals. The argument that these were “ proposals ” and not “bids ” does not impress the court, since in fact all bids are proposals. Nevertheless, it does not appear the Authority followed the mandate of subdivision 5 of section 151 of the Public Housing Law, which required the rejection of any bids which did not contain a noncollusion bidding certification, and it does not appear it complied with section 151-a of the Public Housing Law, requiring separate specifications for certain work; and lastly, it did not comply with section 152 of the Public Hous *113 ing Law which incorporates section 220 of the Labor Law. Speaking of section 220 of the Labor Law, the court in Austin v. State of New York (258 N. Y. 113, 117) stated: “ The present statute is an attempt by the State to hold its territorial subdivisions to a standard of social justice in their dealings with laborers, workmen and mechanics. It is to be interpreted with the degree of liberality essential to the attainment of the end in view.” (See, also, U. S. Code, tit. 42, § 1416.)
Having decided that the procedure followed by the Housing Authority is faulty and cannot stand, it may not be strictly necessary to discuss the question of whether the award to the highest bidder was arbitrary or unreasonable. However, the court feels that this may be an additional reason for sustaining the petition.
Section 151 of the Public Housing Law provides: “ If the authority shall deem it to its best interest or necessary or desirable to effectuate the purposes of this chapter or the economy and efficiency of construction and operation of a project, the authority by a majority vote of its members may either reject all bids or readvertise for bids or by unanimous vote of its members may accept a bid other than the lowest bid. ’ ’
The court fully realizes it is not the function of judicial review in an article 78 proceeding to substitute the court’s judgment for that of the body being reviewed, but only to determine if the Authority’s action may be supported on any reasonable basis. (See Matter of Tuller Constr. Co., 257 N. Y. 206; Syracuse Intercepting Sewer Bd. v. Fidelity & Deposit Co. of Md., 255 N. Y. 288; Matter of Kayfield Constr. Corp. v. Morris, 15 A D 2d 373.) Nevertheless, the explanation of the Authority as to the inability of petitioner to complete the project within a reasonable time, differs from their own selected subcommittee who in their report stated, in part: “ It is the committee’s opinion that all proposers can meet reasonable schedules. ” Nor would the fact the Authority had previously dealt with the respondent, Stirling Homex Corporation, with good results seem to be sufficient reason for ignoring all other bids. The large amount of money involved between the high bid and the low bid makes it seem imperative not to arbitrarily ignore the lowest bidder without good reason based on sufficient facts to justify such rejection, and acceptance of the highest bid. (See Matter of Cestone Bros., 276 App. Div. 970.)
In accordance with the above, the petition is granted to the extent that the matter is remitted to the Massena Housing Authority for the purpose of requesting new proposals or bids, if so advised, complying with legal requirements; in other respects, denied.