Peter Hulburt, Esq. Village Attorney, Cuba
You have asked whether a village may enter a lease-purchase agreement under the "turnkey" concept for the construction of a fire hall on property presently owned by the village, but which would be sold to the builder prior to entry into the lease-purchase agreement and then eventually resold to the village upon the completion of the hall.
A village may purchase or lease real and personal property "as the purposes of the corporation may require" (Village Law, §1-102[1]). The expenditure of village funds for a fire hall is an appropriate public purpose.
The General Municipal Law places two restrictions on the type of purchase the Village of Cuba contemplates making. Section 101(1) requires separate competitive bids for the plumbing, electrical, and heating and ventilating portions of a public-works contract which exceeds $50,000. Section 103(1) requires all contracts for public works exceeding $5,000 to be awarded on the basis of competitive bidding.
The bidding requirements of the Public Housing Law, §§ 151 and 151-a, which are nearly identical to those of sections 101(1) and 103(1) of the General Municipal Law, have been applied to the "turnkey" concept inMatter of North Country Development Corp. v Massena Housing Authority,65 Misc.2d 105 (Sup Ct, St. Lawrence Co, 1970) and in Matter of Marino vTown of Ramapo, 68 Misc.2d 44 (Sup Ct, Rockland Co, 1971). In Massena,
the court found that the requirement for separate competitive bids were impermissibly circumvented by an agreement under which the local housing authority, which owned the land upon which the housing was to be built, would convey the land to the builder and then, once the dwelling units were constructed, would repurchase the property (65 Misc.2d at 106
[1970]). The court in Marino viewed the property at issue in Massena as in the continuous ownership of the housing authority and commented further, "that a `turnkey' project on the property always owned by the authority is governed by New York law. * * * Massena merely represents an illustration of a local authority attempting to avoid New York bidding requirements on public works" (68 Misc.2d at 53 [1971]). Only in a "pure turnkey" situation, where the local government does not own the subject property, will public works and purchase contracts be exempt from competitive bidding requirements (id., at 54). (See, also, our informal opinion No. 81-122, a copy of which is enclosed.)
We believe that the situation which you have described in your letter is analogous to that in Massena. We understand that the Village of Cuba presently owns the property upon which the fire hall is to be built and that the village plans to sell the property to a particular builder. Upon completion of the hall, the village would enter into an agreement under which it would ultimately repurchase the property from the builder. (SeeAlbion Industrial Center v Town of Albion, 62 A.D.2d 478 [4th Dept, 1978], which held that a lease agreement with an option to buy is to be viewed as a construction and purchase contract within the requirements of General Municipal Law, § 103). We conclude that should the Village of Cuba enter into the proposed contract, it would be in violation of the requirements of sections 101(1) and 103(1) of the General Municipal Law. We understand the budgetary restraints which make it impractical for the Village of Cuba to pursue this project by conventional means, but we believe the law to be clear and not susceptible to any other construction.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of views of this office.