ROGERS, Justice.
 

 Plaintiffs, as residents and taxpayers of the Parish of St. Bernard, brought this suit within the thirty-day limitation allowed by law to enjoin the Police Jury from borrowing the sum of $90,000 on certificates of indebtedness payable in twenty years in principal and interest from a pledge and dedication of three-fourths of one mill of the Parish General Alimony or Ad Valorem tax. Plaintiffs obtained a restraining order, and, after hearing on the rule nisi, a preliminary injunction in accordance with the prayer of their petition. On the trial of the merits, the preliminary injunction was perpetuated. This appeal followed.
 

 This litigation arose out of the following circumstances. At a regular meeting, held on December 1, 1942, the Police Jury of the Parish of St. Bernard, purporting to act under the provisions of Act 62 of 1942, amending Section 1 of Act 87 of 1928, adopted a resolution authorizing the issuance of certificates of indebtedness in the sum of $90,000 for the purpose of raising
 
 *683
 
 the funds necessary to discharge an indebtedness of the Parish of a like amount. The indebtedness, incurred prior to July 1, 1942, which was formally acknowledged in the resolution, consisted of $10,838.11 of open-accounts or accounts payable; $24,684.48 on notes with interest due the Whitney National Bank; $50,872.67 on notes with interest due the St. Bernard Bank and Trust Company; and $3,681.91 on notes with interest due the McWilliams Dredging Company — a total indebtedness of $90,007.17. The resolution provided that the certificates of indebtedness should be negotiable, bearing not more than three per cent per annum interest, payable semi-annually, "and should mature in twenty years. The resolution further provided that the certificates were to be secured and repaid by the pledge and dedication of the three-fourths of one mill of the Parish General Alimony or Ad Valorem tax of four mills. The proposed issuance and sale of the certificates of indebtedness was approved by the State Bond and Tax Board and by the Director of Finance.
 

 Plaintiffs, in their suit, contest the correctness of the debts, the legality of the resolution, the validity of the certificates of indebtedness, and the security pledged for their payment. The plaintiffs allege that, with respect to the open accounts, no information whatever is set forth in the resolution by which their nature or legality can be determined. Plaintiffs further allege that although the Police Jury states in the resolution that “no funds are available at this time” in its general fund to pay its indebtedness, there is included in the proposed,loan an indebtedness of $42,500 due th.e St. Bernard Bank and Trust Company, the fiscal agent of the Parish, under contracts executed on March 14 and June 22, 1942; that under these contracts the revenues from the Parish General Alimony tax and other Parish revenues to be collected by or for the account of the Police Jury for the tax year of 1942 are pledged for the payment of this indebtedness; that when these taxes, amounting to more than $65,000 are collected there will be available to the Police Jury more than sufficient money to pay "the indebtedness of $42,500, and therefore it is not necessary to increase the indebtedness of the Parish by making a second loan to obtain the funds to discharge the indebtedness of'$42,500 which is secured by a pledge of the 1942 tax revenues of the Parish.
 

 Plaintiffs allege that although the Police Jury states in. its resolution that no part "of the Parish General Alimony tax of four mills, based on the 1941 assessed valuation of taxable property, has been or is pledged to secure the payment of any indebtedness whatsoever, the fact is that the Police Jury executed the contract on May 8,' 1940, with the Whitney National Bank and the St. Bernard Bank and Trust Company for the payment of a total indebtedness of $50,-370.07 with interest; that in the contract, the Police Jury pledged and dedicated to the banks, as security for the payment of the indebtedness, all its excess revenues for the year 1940 and each succeeding year through the year 1949. Plaintiffs attack, as incorrect, the statement' in the resolution that the remaining three and one-fourth
 
 *685
 
 mills of the four mill tax, together with other Parish revenues, will provide ample income to defray the expenses of the Parish government and of other general, parochial and statutory charges and they set forth in •detail the reasons on which the attack is predicated. Plaintiffs allege' that the proceedings and resolution of the Police Jury contravene the provisions of Act 32 of 1902, .as amended by Acts 128 and 270 of 1910, for the reason that there is no unpledged excess of annual tax revenues accruing to the Police Jury to and including the year 1949 above statutory, necessary and usual •charges.
 

 After its exception of no right or cause •of action was overruled, the defendant Police Jury answered plaintiffs’ petition, .setting forth generally that in adopting the .resolution complained of, it complied with all the provisions of law governing such .matters. Defendant specifically denied -plaintiffs’ allegations that it was not necessary to liquidate the indebtedness of $42,-500 due the St. Bernard Bank and Trust Company by the issuance and sale of the certificates of indebtedness.
 

 We find no error in the action of •the trial judge in overruling defendant’s exception of no cause or right of action. Act '347 of 1938, which amends section 2 of Act '87 of 1928 under which the resolution of the Police Jury was adopted, specifically provides that for a period of thirty days after the promulgation of such a resolution, “any •party in interest shall have a right of action” to judicially test the validity and legality of the proceedings authorized by the statute. Plaintiffs’ suit was brought within the thirty-day period provided therefor.
 

 It is the firmly established jurisprudence of this State that a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duty in any unauthorized mode which would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. The fact that the taxpayer’s interest might be small and not susceptible of accurate determination is not sufficient to deprive him of the right. The action is regarded as having a public character and as being a proceeding in which the public complains. Stewart v. Stanley, 199 La. 146, 5 So.2d 531, citing Donaldson v. Police Jury, 161 La. 471, 109 So. 34; Borden v. Louisiana Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183; and Graham v. Jones, 198 La. 507, 3 So.2d 761. See, also to the same effect, Ricks v. Close, 201 La. 242, 9 So.2d 534, where the Court held, citing Graham v. Jones and Stewart v. Stanley, that the right of a taxpayer to maintain an action of the nature involved there was not open to dispute. In that case the Court maintained the right of a taxpayer to enjoin State officials from expending public funds under color of authority of alleged unconstitutional or illegal statutes. The principle thus announced also applies to parish officials attempting to expend public funds under the authority of an alleged illegal resolution of the Police Jury.
 

 The judge of the district court assigned the following reasons for holding that the
 
 *687
 
 resolution of the Police Jury was invalid and the issuance of the certificates of indebtedness, with a pledge of a certain proportion of its General Alimony or Ad Valorem tax, was unauthorized, to-wit:
 

 “On the trial of the rule nisi for preliminary injunction and also on the trial on the merits the evidence adduced clearly showed ' that all the St. Bernard Parish Police Jury revenues from 1940 through the year 1949 are pledged to secure payment of the extension of maturities of notes and interest thereon amounting to $35,554.00, under contracts between the Police Jury of St. Bernard to the St. Bernard Bank and the Whitney National Bank, as well as under the two fiscal agency contracts totalling $42,500.00, executed by the said Police Jury and the St. Bernard Bank. Accordingly, the Police Jury has no available excess unpledged revenues, at least until after 1949, to pledge as security for the payment of the amounts which would become due upon the certificates of indebtedness proposed to be issued by the Police Jury under its plan to borrow $90,000.00.
 

 “Under the Act 32 of 1902, as amended, which must, be considered in connection with Act 87 of 1928, as amended, particularly by Act 62 of 1942, the Police Jury can execute a pledge only of its excess revenues which are unpledged, to secure the payment of certificates of indebtedness it proposes to issue. Hence it follows that the plan proposed by the defendant Police Jury resolution of December 1st, 1942, and the certificates of indebtedness proposed to be issued by the resolution, are clearly without ¡ authority of law. Furthermore, $42,500.00 of all the debts which the Police Jury proposes to pay, were borrowed in 1942' under fiscal agency contracts executed in that year. With the collection of the 1942 taxes pledged to pay these loans, within a relatively short period of time, this debt will be extinguished. . There is no merit to the argument that the payment of $42,500.00 through the sale of certificates of indebtedness would provide a surplus to put the Parish on a cash basis. Nowhere does the law authorize the creation of a surplus by the borrowing of money and the issuance of certificates of indebtedness. The statute under which the Police Jury attempts to raise $90,000.00 provides only for the payment of debt lawfully incurred prior to July 1st, 1942, by pledging unpledged excess revenues.
 

 “On the trial on the merits nothing in the evidence adduced has indicated that the above findings are no longer applicable in this case, and hence the reasons set forth in the judgment granting the preliminary injunction are now equally applicable to a decision of this cause on its merits.
 

 “When this cause was heard on its merits, the Court was particularly attentive to the testimony of Philip Epwiley, Parish Treasurer. Rowley testified extensively, referring to the books and records of accounts of his office. It was clearly shown by the testimony of this witness, and other evidence, that the Police Jury has not in fact enjoyed a surplus of funds during the years 1940 or 1941, and that it cannot look forward to any surplus funds in 1942, after payment of statutory, necessary and usual charges as itemized in its 1942 budget of
 
 *689
 
 probable expenditures after the 1942 General Alimony or Ad Valorem Parish taxes have been, collected and added to all other Parish revenues for that fiscal year already realized.
 

 “It is apparent from the testimony of Rowley, that the books and records of the Parish Treasurer are not kept in such a ■manner as to be informative or responsive to the item of estimated revenues. The effect of the witness’s testimony and other Police Jury evidence consisting of its tentative estimate of probable expenses and revenues for the year 1943 show that the Police Jury will not have any surplus or ■excess revenues during 1943, and therefore the defendant Police Jury cannot legally pledge 3/4th of one mill Parish General Alimony or Ad Valorem tax as security for the payment of a $90,000.00 loan or ■issuance of certificates of indebtedness.”
 

 In the original brief filed on behalf of defendant, it is argued under a specification of errors that the judge of the district ■court erred in three particulars: first, in holding that the issuance of the certificates •of indebtedness secured by pledge of three-fourths of one mill of the General Alimony tax, as proposed by the resolution of the Police Jury, is without authority of law because the excess revenues of the Parish for the years 1943 through 1949 are pledged to secure the payment of an indebtedness due the Whitney National Bank and the St. Bernard Bank and Trust Company amounting to $34,683.11 under contracts executed between the banks' and the Police Jury, and because, further, the revenues from the General Alimony tax of 1942 are pledged to secure an indebtedness of $42,500 due the St. Bernard Bank and Trust Company under two fiscal agency contracts executed in 1942 by the bank and the Police Jury; second, in holding that the proposed issuance of certificates of indebtedness is illegal because in a relatively short period of time the indebtedness of $42,500 due the St. Bernard Bank and Trust Company will be discharged from the proceeds of the 1942 General Alimony tax, which are pledged to secure the indebtedness; and third, in holding that the Police Jury"did not, in 1940 or 1941, enjoy a surplus of funds; that it could not look to any surplus of funds in 1942; that it will not have, in 1943, any surplus or excess revenue, and that therefore the Police Jury can not legally pledge three-fourths of one mill of the General Alimony tax as security for the payment of the proposed certificates of indebtedness.
 

 Since the questions raised by defendant’s specifications of error involve the same or related issues, we shall discuss them as a whole.
 

 The judge of the district court, in reaching his conclusions, took into consideration the provisions of Act 32 of 1902, as amended, in connection with Act 87 of 1928, as amended.
 

 Act 32 of 1902 amended Act 30 of the Extra Session of 1877. These acts provide that any excess revenues above statutory, necessary and usual charges may be applied by a Police Jury to the payment of amounts due and unpaid out of the revenues of former years, and that a Police Jury shall have the authority to make, in
 
 *691
 
 any year, agreements or contracts dedicating in whole or in part the excess revenues of subsequent years, not exceeding ten years. The statutes further provide “that no dedication of future revenues shall be made which, alone or with other prior dedications in force, shall exceed the estimated excess of revenues over the statutory, necessary and usual charges of the year in which the agreement or contract is made * *
 

 Section 4 of Act 87 of 1928 declares: “That this act shall not be construed as repealing, or in any manner modifying or affecting, Act No. 32 of 1902, or laws amendatory thereof, but that all other laws in conflict herewith be and the same are hereby repealed.”
 

 It has been the policy of the Legislature to amend Section 1 of Act 87 of 1928 every two to four years by changing the date up to which debts legally contracted or incurred might be refunded under the statute. Act 62 of 1942 is the latest amendment to this act. Section 4 is not repealed or affected by any-of the amendatory acts.
 

 The record shows that the debts which the Police Jury proposed to fund by the certificates of indebtedness amounted to $90,077.17. This indebtedness was made up of the following items: $34,996.43 due the Whitney National Bank and the St. Bernard Bank and Trust Company, for the payment of which the Police Jury pledged and dedicated to the banks, all its excess revenues through 1949, which amount, under the contract, is payable at the rate of $10,000 a year on or before May 1st of ■each year, and $40,874.04, being the balance due on an indebtedness of $42,500 incurred in 1942, .when the Police Jury borrowed that amount from its fiscal agent, the St. Bernard Bank and Trust Company, and secured the loan by a pledge of its revenues of 1942 to be derived from the general alimony taxes. No question is made of the legality of these transactions.
 

 The total amount due the banks therefore is $75,553.15. The record shows that the Police Jury will- shortly have ample funds derived from the collection of the 1942 Ad Valorem taxes to discharge the indebtedness of $40,874.04, with accrued interest, thus leaving still due the banks and secured by the pledge of excess revenues the sum of $34,483.11. The unsecured items which the Police Jury proposed to liqui'date under its plan to borrow $90,000, secured by certificates of indebtedness to run for twenty years, amount to less than $15,-000. They are: $3,681.91 due on notes held by McWilliams Dredging Company and $10,838.11 due on various and 'sundry open accounts.
 

 We are not impressed by defendant’s contention that it is necessary to borrow $40,-874.04, secured by long term certificates of indebtedness, for the purpose of liquidating the loans which it made in 1942 with its fiscal agent in order to obviate the necessity of its borrowing a like amount to operate the Parish for 1943. Defendant’s argument in support of its contention is in effect that the payment of this particular item of indebtedness, through the issuance and sale of the certificates of indebtedness will free the ad valorem tax of 1942 from the pledge held by the fiscal agent and
 
 *693
 
 ■thereby create a surplus fund derived from the collection of those taxes on which to •operate the Parish for the year 1943. The argument is untenable.
 

 As pointed out by the judge of the •district court in his reasons for judgment, the law under which the "Police Jury is attempting to proceed does not provide for .the creation of a surplus fund by permitting the Police Jury to. borrow money on long term certificates of indebtedness, but only for the payment of debts legally incurred before July 1, 1942. The fact that the Police Jury.borrowed $42,500 from its fiscal agent in the months of March and June, 1942, to operate the Parish during that year was an indebtedness incurred before December 31, 1942, does not mean that the Police Jury may extinguish the indebtedness by the issuance and sale of'certificates of indebtedness maturing in twenty years, thereby obtaining the release and use of the ad valorem taxes collected in 1942 to operate the Parish in 1943.
 

 It is stated in the reply brief filed on behalf of the defendant that the present members of the Police Jury, who took office on May 8, 1940, have not only economically 'administered the affairs of the Parish, but have also substantially reduced its debts. By adhering to its careful management of the finances of the Parish, the Police Jury may, and probably will, be enabled to effect further economies thereby enabling it to increase its payments on the outstanding indebtedness. In these circumstances, it seems to be almost certain that the Police Jury will be able, to operate the Parish during the year' 1943- for much less than $42,500. Obviously, in that event it will not be necessary for the Police Jury to borrow from its fiscal agent any greater sum than will be necessary to operate the Parish, paying 'only one year’s interest thereon instead of twenty years’ interest on the larger amount. By cutting its coat according to its cloth for the next few years, as the Police Jury -is apparently doing, it may be'able to discharge a large portion, if not the whole, of its indebtedness out o(f the annual surpluses resulting from its economical administration.
 

 The record discloses that, according to the tentative estimate of public revenues and expenses for the year 1943, it is not certain the Police Jury' will have any surplus funds or excess revenues during that year. This being true, the Police Jury is not in a position to legally pledge three-fourths of one mill of the general alimony tax as security for the payment of the principal and interest of the proposed certificates of indebtedness.
 

 On May 8, 1940, the contract was executed by the defendant Police Jury, the Whitney National Bank and the St. Bernard Bank and Trust Company, extending the maturities to 1949 on $50,370.07 of balances due by the Police Jury under its fiscal agency contracts of 1938 and 1939. On December 1, 1942, this indebtedness had been reduced to $34,683.11, which amount is included in the indebtedness of $90,000, for the payment of which the Police Jury proposes to issue certificates of indebtedness involved in this case. Under
 
 *695
 
 the contracts with the banks, all excess revenues of the Police Jury up to and including the year 1949, are pledged to secure the payment of the indebtedness of $34,-683.11.
 

 Under the provisions of Section 2 of Act 32 of 1902, as amended by Acts 128 and 270 of 1910, the Police Jury is without authority to pledge or dedicate future, revenues, which, with other dedications in force, exceed the estimated excess of revenues over the statutory, necessary and usual charges and time contracts.
 

 The contract provides for annual payments to the banks and, under the contractual provisions, the Police Jury does not have the option of retiring the entire amount due the banks at any time it may raise the necessary funds to do so, as contended by defendant. It may be that the banks would be willing to waive the terms of payment fixed in the contract and accept payment in full if such payment was tendered them by the Police Jury. But there is nothing in the record to show that any arrangement has been made with the banks to accept payment of the indebtedness otherwise than as stipulated in the contract. In these circumstances, plaintiffs argue that the taxpayers of the Parish would have no assurance that, if the loan of $90,000.00 was effected and certificates of indebtedness maturing in twenty years are issued and sold by the Police Jury, the $34,683.11 with accrued interest, due the banks under their contract will be retired. Plaintiffs say that the only assurance the taxpayers will have is that an additional debt of $90,000, secured by the pledge of taxes and running for a period of twenty years, would be imposed upon them. There-is a great deal of force in the argument.
 

 Based on an informal estimate of revenues and expenditures filed by the Police-Jury, it is claimed on behalf of the Police Jury that the revenues of the Parish for-1942 derived from all sources will amount, to a total of $66,300, and the statutory and' ordinary charges for 1942 will amount to-approximately $65,479, an excess in revenues of only $821. It is further claimed that the revenues for the Parish from all sources for the year 1943 will amount to $68,277.05 and the usual, statutory and ordinary charges for the same year will amount to approximately $55,790.70. But the Police Jury does not show from what source it will receive approximately $14,-000 more in additional revenue in 1943 than in 1942, nor by what means the statutory and ordinary charges of $65,479 for 1942 will be reduced to $55,790.70 for 1943. The record shows, as found by the judge of the district court, that the Police Jury did not have any surplus funds for the year 1940 and 1941 and that it actually had a deficit in 1942.
 

 There is nothing in the record to suggest that the Police Jury can look forward to the possession of any unpledged surplus revenues for the year 1943.
 

 In these circumstances, the defendant Police Jury can not legally borrow $90,000 on certificates of indebtedness maturing in twenty years and thereby impose additional tax burdens upon the taxpayers of the
 
 *697
 
 Parish of St. Bernard among whom plaintiffs are included.
 

 For the reasons assigned, the judgment appealed from is affirmed.