Richard J. Cardamons, J.
This is a motion pursuant to article 78 of the CPLR to compel respondents to comply with the provisions of section 101 of the General Municipal Law.
The petitioner is a New York membership corporation known as the General Building Contractors of New York State. It consists of 180 general contractors who perform a substantial dollar volume of the public works building construction in this State. Some of its members are residents of Oneida County. The principal respondent, the County of Oneida, is the owner of a proposed public project, a library-academic building, to be constructed at Mohawk Valley Community College in Utica, Oneida County, New York.
Sealed bids on this proposed construction were received by the respondents on April 26, 1967, at which time they were to be publicly opened and read. This proceeding, instituted by the petitioner by show cause order dated April 25, 1967, contained a stay issued by this court (Aronson, J.) prohibiting the respondents from opening any of the bids submitted on the library-academic building until the return date of this show cause order. The stay has been continued pending this determination.
The petitioner contends that the form of the specifications prepared by the owner and the architect for this multiple contract project, dated March 29,1967, violates the requirements *261 set forth in section 101 of the General Municipal Law. It claims that the language used in the specifications has the effect of shifting responsibilities required by the statute to be imposed upon the owner and/or the architect to the contractors, resulting in confusion insofar as the orderly progress of this public works project is concerned.
The respondents assert that petitioner had no standing in court since there is no showing that any of the members of the petitioner corporation are actually bidders on the Mohawk Valley Community College project and that this is not a class action or a taxpayers’ action. Respondents further assert that the specifications as prepared do not violate any statute or law of this State; nor do they impose any additional requirements on the general contractors bidding on this project. Finally, respondents argue that even if some additional work is required by the specifications, such can be compensated for in the bid submitted by any contractor who desires to receive the award for this particular project.
The threshold question is whether the petitioner has standing to initiate a proceeding in this court. The preparation of specifications, advertising for bids and awarding contracts for a public project is a matter of public interest which relieves petitioner of the obligation to show that it is an aggrieved party or that it has any special interest. (Matter of McDonough v. Board of Educ. of Lackawanna City School Dist., 20 Misc 2d 98, 99-100 [Sup. Ct. Erie County, 1959]; 22 Carmody-Wait, New York Practice, § 310, p. 398.) An article 78 proceeding such as the one before this court may be instituted by one who is a citizen, resident and taxpayer even though there is no personal grievance or personal interest in the outcome shown. (Policemen’s Benevolent Assn. of Westchester County v. Board, of Trustees of Vil. of Croton-On-Hudson, 21 A D 2d 693 [2d Dept., 1964].) The petitioner has standing to institute this proceeding in this court.
The language used in the specifications which petitioner claims violates the statute is found at pages SC-9, SC-10 and Addendum No. 1 (1-2) of the specifications for this project. It is there provided that the contractor will ‘ ‘ check shop drawings # * * to make sure they conform to the intent of drawings and specifications and for contract requirements. Correct drawings found to be inaccurate or otherwise in error. * * * The contractor will be fully responsible for the accuracy of such drawings and for their conformity to the drawings and specifications, regardless of approval by the architect, unless the contractor notifies the architect in writing of any deviations *262 at the time he furnished such drawings. (SC-9). The general construction contractor shall be fully responsible for the proper fitting of all work * * * Within 30 calendar days after the execution and delivery of the contracts, the contractor for 1 Contract No. 1 — General Construction ’ shall submit to the Architect for approval a satisfactory progress schedule covering total sequence and expected status of the work at any time involving the work for ‘ Contract No. 1, 2, 3 & 4 ’ ” (SC-10). The substance of these requirements relating to shop drawings and progress schedules is repeated in the 1 ‘ Special Conditions ” of Addendum No. 1 at page 2. Petitioner contends that it is these provisions which are an attempt to assign supervisory work to contractors which should be the responsibility of the owner and/or its agent, the architect, and that such are a violation of section 101 of the General Municipal Law.
At the root of this controversy lies the question upon whom shall devolve the day-to-day responsibility for the orderly progression and co-ordination of this public project. The provisions contained on pages ¡SC-9, SC-10 and Addendum No. 1 relative to the general contractor’s responsibilities for shop drawings and progress schedules, particularly that expression which makes the general contractor “ fully responsible for the proper fitting of all work ” appear to this court to impose upon the general contractor responsibilities and obligations as to supervision and co-ordination not envisioned by the statute and which should be borne by the owner and/or the architect.
Section 101 of the General Municipal Law provides in substance that in any project which exceeds the sum of $50,000 the owner will prepare separate specifications for the three subdivisions, (a) plumbing, (b) heating, ventilating, and (c) electric wiring (subd. 1). The specifications shall be drawn so. as to permit separate and independent bidding upon each of the three subdivisions of work (subd. 2). While the statute is silent as to whether the muncipality may assign the work of supervision to the successful bidder, it appears to this court that, had the Legislature intended such assignment where separate bidding is required, it would have so provided. Section 135 of the State Finance Law (which applies to State projects) contains provisions whose substance is identical to that contained in section 101 of the General Municipal Law (which applies to the projects of other political subdivisions). Other State statutes have used this same language in setting forth provisions relating to construction of public projects. Section 151-a of the Public Housing Law is an example. . It is revealing to *263 examine the Governor’s Memorandum which accompanied the amendment of section 151-a (L. 1946, ch. 499) which states:
‘ ‘ There is much controversy concerning the measure. Certain of the housing authorities and other administrative agencies urge disapproval of the measure on the ground that it involves the agencies in complications in the handling of details with contractors who ordinarily would be subcontractors handled by the general contractor. On the other side, it is urged that by separate specifications and separate contracts the cost of projects will be lessened. It is argued that by separate specifications and contracts the general contractor does not add his profit on the subcontracts to his overall bid.
11 The issue seems rather simple. Unquestionably, the handling of more rather than fewer contracts increases administrative problems.” (N. Y. Legis. Annual, 1946, p. 207.) Thus, the State recognized the increase in administrative problems imposed upon it by the multiple bid contract system but accepted this burden in view of the over-all savings.
The interpretation of the statute (General Municipal Law, § 101) must be read and given effect as it was written by the Legislature and not as this court thinks it might have been written if the Legislature could have imagined all of the problems which might arise under it. Here, it appears that the County is attempting to exercise powers not expressly granted to it under the statute and which can be exercised only where it is “ so essential to the exercise of some power expressly conferred as plainly to appear to have been within the intention of the legislature.” The implied power must be necessary, not merely convenient, and the intention of the Legislature must be free from doubt. (Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634, 639 [1944].) It does not appear that the shifting of responsibility for co-ordination and supervision from the county or its agents, in these cases its architects, may be shifted to any of the prime contractors. The power which the county seeks to imply into the language of the statute is not a necessary one, but merely a convenient one.
If the Legislature had intended to give to the county the power to shift some of its responsibilities and obligations from itself or its architect to one of the prime contractors it could have easily provided for it. Indeed, the State Legislature in legislation similar in nature to this statute has chosen to do just that (Mental Hygiene Law, art. 2-B, § 29-f), subd. 6; Public Authorities Law, art. 5, tit. 12, § 1287 [L. 1967, ch. 722]).
These statutes which provide for separate contracts were enacted to protect the municipalities and the taxpayers. (Molloy *264 v. City of New Rochelle, 198 N. Y. 402 [1910]; Matter of Allen v. Eberling, 24 A D 2d 594 [2d Dept., 1965].) Such is not at issue here because the taxpayers are going to pay for this work of co-ordination and .supervision of the job regardless of who performs it. The practical question is whether it shall be performed by the architects or by one of the prime contractors. Both claim that the other should perform this work. In that connection it is to be noted that in chapter 16 of the Architect’s Handbook of Professional Practice (Sept., 1963 ed.) it is stated at page 2: “ Because of its simplicity of administration, the single contract system is the most convenient for the architect, and is generally considered to be the most satisfactory. The separate contract system will result in more work and responsibility for the architect * * * He must assume the role of coordinator of all the prime contractors. * * * The administration of multiple contracts is obviously more time consuming than is a single contract.” This language is a clear admission as upon whom the responsibility for co-ordination and supervision must devolve in a separate-bid contract. Under similar circumstances involving an application of section 135 of the State Finance Law, it was held that the State Architect had supervision of and direction over the contract and a duty to co-ordinate the entire job. (Forrest Elec. Corp. v. State of New York, 52 Misc 2d 215, 216-217 [1966].)
While petitioner has asked that new specifications be drawn in ■strict compliance with section 101 and that no awards ¡be made, it appears to this court that the same can be achieved by simply eliminating the objectionable language used in the specifications and thereafter proceeding to award the contract under the specifications as amended by an order of this court and that the stay heretofore granted be lifted immediately upon the filing of an order so providing.