381 So.2d 441 (1980)
LEAGUE OF WOMEN VOTERS OF NEW ORLEANS et al.
v.
The CITY OF NEW ORLEANS et al.
No. 66024.
Supreme Court of Louisiana.
March 3, 1980.
Rehearing Denied April 7, 1980.
*442 John F. Robbert, New Orleans, amicus curiae by New Orleans Coalition, Inc.
Albert Mintz, Patrick J. Browne, Nathan T. Gisclair, Jr., Montgomery, Barnett, Brown & Read, New Orleans, for defendant-respondent, City Council of the City of New Orleans.
Robert E. Harroun, III, Baton Rouge, for Legislative Auditor, respondent.
Arthur L. Ballin, New Orleans, for Bd. of Assessors, respondents.
Salvador Anzelmo, Acting City Atty., Debra J. Fischman, Asst. City Atty., for defendants-respondents, the Mayor of the City of New Orleans and the City of New Orleans.
Vernon V. Palmer, New Orleans, for plaintiffs-applicants, League of Women Voters of New Orleans, et al.
Richard J. McGinity, McGinity & McGinity, New Orleans, for Bd. of Levee Commissioners of the Orleans Levee District, respondent.
WATSON, Justice.[*]
This case presents basically the question of whether plaintiffs are entitled to a writ of mandamus directing various governmental agencies and officials to comply with Act 617 of 1977, as amended by Act 614 of 1978,[1] thereby recouping for the City of New Orleans and the Orleans Levee Board *443 certain revenues alleged to have been lost through failure to comply with Article 7, Section 23 of the Louisiana Constitution of 1974.[2]
*444 Plaintiffs are the League of Women Voters of New Orleans, a nonprofit corporation; Nancy Turner, the President of the League, who alleges that she is a taxpayer, voter and citizen of New Orleans; and, Betty Wisdom, who also alleges that she is a voter and taxpayer in Orleans Parish. Both Ms. Turner and Ms. Wisdom assert that they regularly pay ad valorem property taxes of the City of New Orleans.
Defendants are the City of New Orleans and its Mayor; the City Council of New Orleans, and the members of the City Council individually; the Board of Levee Commissioners of the Parish of Orleans; the Board of Assessors of Orleans Parish, and the Assessors individually who comprise the Board; and, the Legislative Auditor of the State of Louisiana.
In April 1979, the League and the two taxpayer plaintiffs filed suit seeking a writ of mandamus against the defendants. Plaintiffs asserted that Article 7, Section 23 of the Louisiana Constitution of 1974 provided for a new system of property appraisal in Louisiana whereby each tax recipient agency was required to adjust its millage for 1978 to provide the same revenue as in the preceding year. They alleged that in Orleans Parish, as a result of erroneous information furnished by the Assessors, the 1978 millage was incorrectly and unconstitutionally fixed, causing the City and Levee Board to lose several million dollars in tax revenue.
Plaintiffs contend that Act 617, as amended, provided the remedy for this tax shortfall. Plaintiffs allege that Section 4 of the Act requires the Assessors to furnish to the taxing authorities (here, the City Council and Levee Board) a correct statement of the assessed value of taxable property on the tax rolls in 1977 as distinguished from the property which was subject to taxation for the first time in 1978. They allege that the Assessors submitted erroneous figures and have failed to supply a correct statement as required.
Second, plaintiffs allege that because the statement supplied by the Assessors caused an undercollection of taxes in 1978, the City Council and Levee Board are required by Section 5 of the Act to recompute the millage for 1979 and subsequent years according to a specified formula and to impose "an adjustment for 1979 only" to recoup the 1978 losses. Plaintiffs admit that in Ordinance Number 7647 M.C.S. passed on April 5, 1979, the City Council purported to carry out the recomputation required by Section 5, but complain that the Council failed to impose the adjustment.
Third, plaintiffs contend that the City Council violated Section 5 of the Act by setting the millage level of the Levee Board without statutory authority or authorization from the Levee Board to do so and that even if it had such authority, it violated the section by failing to impose the adjustment on the Levee Board's behalf. Plaintiffs contend that the Levee Board failed to carry out its duties to recompute and set its own millage by proper authorization and also failed to require the "1979 only" recoupment.
Finally, plaintiffs view Section 7 of the Act as imposing a ministerial duty on the Legislative Auditor to intervene and order changes in the required millage or adjustment because the City Council and Levee Board failed to do as required.
In response to plaintiffs' original petition and amended petition, the latter adding the Assessors as parties defendant and elaborating on plaintiffs' contentions, the various defendants filed several pleadings. The City of New Orleans and its Mayor, as well as the City Council of New Orleans and the Council members filed pleadings answering plaintiffs' petitions, denying their claims, and asserting that plaintiffs have no cause and no right of action.[3] The Levee Board adopted the pleadings filed on behalf of the City of New Orleans. The Legislative Auditor filed an extensive answer asserting chiefly that he has carried out his duties insofar as possible under the circumstances, and asserting specifically that he has discharged his duties under Act 617.
*445 The Assessor filed an answer to the original petition and the amended petition admitting or denying various allegations made by plaintiffs and asserting a third party demand seeking an alternative writ of mandamus directing the City Council of New Orleans and its members to reduce the millage for ad valorem property taxes for 1979 in accordance with the disputed constitutional provision and seeking also an alternative writ of mandamus directed to the Legislative Auditor requiring him to comply with Section 7 of Act 617.
The City Council answered the third party petition asserting principally that they have performed their duties in good faith and their errors, if any, were caused by the fault of the Assessors, the third party plaintiffs.
The Legislative Auditor also answered the third party demand alleging that he had carried out his responsibilities under the constitutional and statutory provisions in question.
RULING OF THE TRIAL COURT:
A hearing was held on August 8, 1979, but apparently no testimony was taken or evidence introduced. The trial court ruled that after considering the pleadings, memoranda, arguments, law and record, the court was of the opinion that Act 617, as amended, created only a discretionary duty on the tax recipient bodies mentioned therein. The court further ruled that the law was in favor of the original defendants and against the original plaintiffs, entitling the original defendants to an order dismissing the petitions for mandamus filed by the League, Ms. Turner and Ms. Wisdom. Further, the court held that the law was in favor of the third party defendants and against the third party plaintiffs and dismissed the mandamus petition filed by the Assessors.
PROCEEDINGS IN THE COURT OF APPEAL:
Both the original plaintiffs and the third party plaintiffs applied for supervisory writs in the Court of Appeal, Fourth Circuit. The writs were granted and considered separately.
In Docket Number 10,886, the League of Women Voters of New Orleans v. City of New Orleans, 375 So.2d 1192 (La.App. 4 Cir.1979), the Court of Appeal reversed that portion of the judgment of the trial court which dismissed the third party petition of Lawrence A. Comiskey, Jr., et al., Assessors of the Parish of Orleans and ordered an entry of judgment in their favor overruling the exceptions as to the third party petition in mandamus and remanding for further proceedings in due course.[4] Neither the City Council nor the Legislative Auditor has sought writs from the ruling of the Court of Appeal as to the third party petition.
In Docket Number 10,870, League of Women Voters v. City of New Orleans, 375 So.2d 1187 (La.App. 4 Cir.1979), the Court of Appeal considered the application of the original plaintiffs, the League and the two taxpayers, for supervisory writs from that portion of the trial court judgment which dismissed their petition for writs of mandamus. The Court of Appeal held that plaintiffs "do state a proper basis for proceeding in mandamus against the defendant assessors" and reversed the trial court's order dismissing the petition against the Assessors. The Court of Appeal held that as to the City of New Orleans and its Mayor, the City Council of New Orleans, and the Orleans Levee Board, the duties under Act 617 are discretionary rather than mandatory. In effect, the Court of Appeal held that the petition of the League and the two taxpayers did not state a cause of action in mandamus against the City and Levee Board, because the actions in question were not ministerial duties of the defendants but discretionary duties.[5] The Court of Appeal also *446 affirmed the dismissal of the petition as against the Legislative Auditor under the theory that his duties were merely derivative from those of the City Council and the Levee Board.
APPLICATION TO THE SUPREME COURT:
The only application to the Supreme Court was that filed on behalf of the League and the two taxpayers seeking a review of the judgment by the Court of Appeal dismissing their petition. Although an opposition was filed, the application was granted, thus having the effect of rejecting the opposition. Neither the Assessors nor the City of New Orleans filed an application for writs. However, because writs were granted to review the ruling of the Court of Appeal, all issues are before the court.
EXCEPTIONS OF NO CAUSE AND NO RIGHT OF ACTION:
The exceptions pleaded by the City of New Orleans and its Mayor, the City Council and its members, and the Levee Board, may be fairly construed as exceptions of no cause and no right of action. Regardless of whether the defendants filed the proper exceptions, "... the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, may be noticed by either the trial or appellate court of its own motion." LSA-C.C.P. art. 927. However, the issue of whether plaintiffs have stated a cause of action is pretermitted since the plaintiffs do not have a right of action under the applicable statutory and jurisprudential authorities.
The exception of no right of action calls into question whether the plaintiff has standing or interest required under the law to bring the suit. Stated in the context of the present litigation, the exception of no right of action asks the question whether the League and the two taxpayers have standing to call the various defendants into court and obtain an order against them requiring them to carry out certain governmental functions, here essentially the raising of taxes.
The individual plaintiffs describe themselves in the amended petition as voters, residents, property owners and taxpayers in Orleans Parish. Their interest in the outcome of this suit is set out in Paragraph 18, as follows:
"The threatened loss of these vital revenues to the defendant Levee Board and defendant City of New Orleans, together with the agencies under its jurisdiction, will cause imminent and irreparable harm by jeopardizing Petitioners Turner and Wisdom's individual interest in receiving sufficient police, fire and flood protection, and other essential services."
The League of Women Voters characterizes itself in the petition as a non-profit organization "dedicated by its Charter and resolutions of its Board to the full and proper utilization of taxes and taxing authority by state and local government." Their interest in the outcome of the action is also stated in Paragraph 18 of the Amended Petition, as follows:
"The noncollection of these funds will also thwart two basic goals of the petitioner League, which are, to find increased sources of revenue for City government and to ensure the equitable distribution of taxes based upon principles of ability to pay and benefits received."
A public right or duty may not be compelled or enforced by a private citizen without a showing of a personal grievance or interest in the outcome.[6] The rule in Louisiana is similar to that stated in Hawkins v. Gregory, 138 Kan. 477, 26 P.2d 247 (1933) where a plaintiff with no special interest apart from the general public was not allowed *447 to maintain an action in mandamus. The court stated:
"[The] state is adequately provided with officers to attend to matters of this sort, and even neglect of or inattention to such duties by public officials does not warrant their assumption by private litigants except where the statutes so provide."
A plaintiff must have a real and actual interest in the action he asserts, LSA-C.C.P. art. 681. Without a showing of some special interest in the performance sought of a public board, officer or commission which is separate and distinct from the interest of the public at large, plaintiff will not be permitted to proceed. State ex rel. Schoeffner v. Dowling, 158 La. 706, 104 So. 624 (1925); Marshall v. Town of Marksville, 116 La. 746, 41 So. 57 (1906); Jumonville v. Hebert, 170 So. 497 (La.App. 1 Cir.1936); Melancon v. Police Jury of Lafayette, 301 So.2d 715 (La.App. 3 Cir.1974); Cully v. City of New Orleans, 173 So.2d 46 (La.App. 4 Cir.1965); Cleveland v. Martin, 29 So.2d 516 (La.App. 1 Cir.1947); and, Bussie v. Long, 286 So.2d 689 (La.App. 1 Cir.1973), writ refused 288 So.2d 354.
In Schoeffner, the court stated:
"... without some peculiar, special, and individual interest, a citizen, though he be a taxpayer, has no standing in court to champion a cause or subject-matter which pertains to the whole people in common, nor has an individual citizen a legal standing in court to enforce the performance of a duty which a public officer owes to the public at large, unless it clearly appears that such individual citizen has a special and peculiar interest in the performance of such duty apart from the interest which he has as one of the general public in having the duty performed."
In Bussie v. Long, supra, the taxpayers-plaintiffs brought a class action suit to compel the Louisiana Tax Commission to perform an assessment of all property at actual cash value for ad valorem tax purposes. In overruling the Commission's exceptions of no right of action, the Court of Appeal recognized an exception to the requirement of a particular or special interest set forth in Schoeffner, supra. The court held that when a public official charged with the unlawful performance or the refusal to perform a legal duty discriminates against a taxpayer by increasing his tax burden or otherwise injuriously affecting his person or property, the taxpayer need not show such an interest in order to sustain a right of action. See, e. g., Donaldson v. Police Jury of Tangipahoa Parish, 161 La. 471, 109 So. 34 (1926); Suarez v. Police Jury of Parish of St. Bernard, 203 La. 680, 14 So.2d 601 (1943).
Unlike the taxpayers in Bussie, supra, plaintiffs here do not seek to restrain an increase in the burden of taxation. Instead, they seek to compel an increase. Nor have they shown an injurious effect sufficient to bring them within the purview of the exception. Their general allegations of jeopardy to their interest in receiving sufficient police, fire and flood protection and other services are not peculiar to plaintiffs themselves or even to taxpayers as a class, but are common to the public at large. In addition, these allegations are too remote to justify an action in mandamus. As plaintiffs have made no showing that the revenues, if collected, would have been allocated to these particular services, any assumption as to the intended use of the funds is unwarranted.
The issue of a taxpayer's ability to sue in that capacity has also been raised in the federal courts. Article III of the United States Constitution confers jurisdiction on the federal courts over "cases and controversies". The plaintiff must have standing. The question is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.
In Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the court discussed the "case and controversy" requirement:

*448 "In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to other branches of government." Id., 392 U.S. at 95, 88 S.Ct. at 1950.
In Flast, the court allowed taxpayers to sue in federal courts to prevent the expenditure of federal funds for purposes prohibited by the Establishment Clause of the First Amendment. The requirements for federal taxpayer standing were set out as twofold. First, the taxpayer must establish a logical link between his status as a taxpayer and the Act of Congress attacked, and second must show that the challenged Act exceeds a specific constitutional limitation on Congress' taxing and spending power.
Here, plaintiffs do not attack the statute as unconstitutional. On the contrary, they seek to enforce it. Their claim is based on an unconstitutional levy which is analogous to the misuse of Congress' taxing and spending power, asserted in Flast v. Cohen, supra. That alone is not enough because they cannot show nor do they claim, that the levy violates some other specific constitutional provision.
The Louisiana Constitution does not contain the "case and controversy" language of the United States Constitution. However, Article 1, Section 22 of the Louisiana Constitution of 1974 provides:
"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."
This provision guarantees access to the courts, but affords greater protection to fundamental interests than to those not of basic constitutional importance. When a claimant is asserting a right not subject to special constitutional protection, access to the courts may be restricted if there is a rational basis for that restriction. Everett v. Goldman, 359 So.2d 1256 (La.1978). Here access to the courts should be restricted to persons with a special interest apart from the interest of the general public. Interference by the judiciary at the instance of these plaintiffs would surpass the authority allocated to us in the tripartite system.
THIRD PARTY DEMAND:
Although all issues are before the court by virtue of the granting of writs, there has been no allegation by any party that the Court of Appeal erred in overruling the exceptions to the third party petition and remanding for further proceedings. Therefore, we will not disturb that ruling of the Court of Appeal on the third party demand.
DECREE:
Defendants' exception of no right of action is maintained. The petition and the amended petition of the League, Ms. Turner, and Ms. Wisdom against the City of New Orleans and its Mayor; the City Council of New Orleans, and the members of the City Council individually; the Orleans Levee Board, and the Legislative Auditor are dismissed, as ordered by the Court of Appeal and the trial court. The judgment of the Court of Appeal in favor of the plaintiffs and against the Assessors is reversed and plaintiffs' petitions are dismissed as against the Assessors. No judgment is entered as to the third party demand; the case is remanded for further proceedings according to law.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
CALOGERO, J., concurs and assigns reasons.
DIXON and DENNIS, JJ., dissent with reasons.
CALOGERO, Justice, concurring.
I concur. I would not disturb the Court of Appeal ruling in this case in any respect. Accordingly, I concur in the Court's ruling insofar as it dismisses relators' mandamus petition against the City of New Orleans *449 and its Mayor, the City Council of New Orleans, and the members of the City Council individually, the Levee Board, and the Legislative Auditor of the State of Louisiana, but for the reasons given by the Court of Appeal.
DIXON, Justice (dissenting).
I respectfully dissent, and would not hold that these plaintiffs have no right of action to force compliance with the law. There is not, as there was in Everett v. Goldman, 359 So.2d 1256 (La.1978), a statute restricting access to the courts. The "special and peculiar" interest of plaintiffs in Bussie v. Long, 286 So.2d 689 (La.App.1973), was no more "special and peculiar" than that of plaintiffs in this case. The rule is an arbitrary one subject to abuse, denying access to the courts for those with a real and actual interest in the suit.
DENNIS, Justice, dissenting.
I respectfully dissent for reasons similar to those given by Justice Dixon. The rule announced today by the majority flies in the face of the constitution and our more recent jurisprudence.
In Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941), we held that, "It is the firmly established jurisprudence of this State that a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duty in any unauthorized mode which would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. The fact that the taxpayer's interest might be small and not susceptible of accurate determination is not sufficient to deprive him of the right. The action is regarded as having a public character and as being a proceeding in which the public complains. * * *" This rule was followed in Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963) and Upper Audubon Ass'n v. Audubon Park Comm'n, 329 So.2d 206 (La.App. 4th Cir.1976) (writs denied 333 So.2d 240) (La.1976). ("To show standing in Louisiana a taxpayer need only show an effect upon the public fisc by the government action in question.")
Considering this recent jurisprudence, and the absence of a statute restricting a taxpayer's access to the courts, there appears to be no rational basis for the restrictive rule adopted by the majority.
NOTES
[*] Chief Judge PAUL B. LANDRY participated in this opinion as Justice ad hoc in place of SUMMERS, C. J.
[1] Act 617 of 1977, as amended by Act 614 of 1978:

Section 1. Each assessor, except in the parish of Orleans, is hereby directed to furnish to each tax recipient body within the parish by May 1, 1978, a statement showing the assessed value of all taxable property appearing on the 1977 tax roll after revaluation and reassessment, and application of increased homestead exemptions as required by Article VII of the Louisiana Constitution of 1974 and Act 387 of the 1976 Regular Session of the Louisiana Legislature. In the parish of Orleans, each assessor shall furnish to each tax recipient body within the parish by November 1, 1977, a statement showing the assessed value of all taxable property appearing on the 1977 tax roll after revaluation and reassessment, and application of increased homestead exemptions, as such information is reported to the Louisiana Tax Commission, and as required by Article VII of the Louisiana Constitution of 1974 and Act 387 of the 1976 Regular Session of the Louisiana Legislature.
Section 2. Each tax recipient body, including multi-parish districts, is hereby directed to utilize the information furnished to them in accordance with Section 1 of this Act to compute the amount of millage required to be levied on the adjusted assessment roll for 1977 that would produce approximately the same result as was produced by levying the millages on the 1977 tax roll. Such computations shall result in millages rounded to the nearest one hundredth of a mill. Each tax recipient body is further directed to levy on the 1978 tax roll the millages obtained in the foregoing computation. In the case of multi-parish districts, the millage to be levied is to be uniform throughout the district and is to be determined on the basis of total assessments within the district.
Section 3. In those cases where the maximum authorized millage was not levied on the 1977 tax roll, such authorization shall be adjusted in the same proportion as the adjustment for millages levied in 1977.
Section 4. After the 1978 tax rolls have been filed, and prior to the date for levying millages for the 1979 tax rolls, each assessor is directed to furnish to each tax recipient body in the parish, a statement indicating the actual amount of the assessed value of all taxable property for that body, exclusive of property subject to taxation for the first time in 1978.
Section 5. Should the information furnished by the assessor as required in Section 4 of this Act indicate that taxes were over-levied or under-levied by one percent or more on the 1978 tax roll because of errors in the information furnished as a result of Section 1 of this Act, then each tax recipient body is hereby directed to recompute and determine the millages that should have been levied on the 1978 tax rolls in compliance with Article VII, Section 23 of the Louisiana Constitution of 1974. Each tax recipient body is further directed to use the millages obtained by such recomputation to levy millages for 1979 and subsequent years. An additional adjustment for 1979 only shall be made if necessary to compensate for any deviations of one percent or more from the amounts that should have been levied on the 1978 tax roll.
Section 6. The provisions of this Act shall not apply to millages levied for the purpose of paying interest and principal of ad valorem tax bonds.
Section 7. In order to carry out the mandate of Article VII, Section 23, of the Louisiana Constitution of 1974, the legislative auditor is hereby authorized and required to review the millages levied by each tax recipient body to determine whether the millages levied are in compliance with the provisions of this Act and the constitution. The auditor shall review both the initial levy under Section 2 of this Act as well as the recomputation and new levy as required in Section 5 of this Act. The auditor shall order changes in the amount of millage levied if it determines that an error or errors have been made in the adjustment of millages as required by this Act and the Louisiana Constitution of 1974.
Section 8. This Act shall become effective upon signature of the governor, or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided by Article III, Section 18 of the constitution.
Section 9. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable.
[2] Article 7, Section 23 of the Louisiana Constitution of 1974:

§ 23. Adjustment of Ad Valorem Tax Millages
Section 23. Prior to the end of the third year after the effective date of this constitution, the assessors and the Louisiana Tax Commission or its successor shall complete determination of the fair market value or the use value of all property subject to taxation within each parish for use in implementing this Article. Except as provided in this Paragraph, the total amount of ad valorem taxes collected by any taxing authority in the year in which Sections 18 and 20 of this Article are implemented shall not be increased or decreased, because of their provisions, above or below ad valorem taxes collected by that taxing authority in the year preceding implementation. To accomplish this result, it shall be mandatory for each affected taxing authority, in the year in which Sections 18 and 20 of this Article are implemented, to adjust millages upwards or downwards without regard to millage limitations contained in this constitution, and the maximum authorized millages shall be increased or decreased, without further voter approval, in proportion to the amount of the adjustment upward or downward. Thereafter, such millages shall remain in effect unless changed as permitted by this constitution. Nothing herein shall prohibit a taxing authority from collecting, in the year in which Sections 18 and 20 of this Article are implemented or in any subsequent year, a larger dollar amount of ad valorem taxes by (a) levying additional or increased millages as provided by law; (b) placing additional property on the tax rolls; or (c) increases in the fair market or use value of property after the first determination of that value to implement this Article. This Section shall not apply to millages required to be levied for the payment of general obligation bonds.
[3] The City in particular vigorously assails the plaintiffs' status to maintain the suit.
[4] The record does not contain exceptions filed as to the third party petition; the Court of Appeal apparently considered the allegations of the answers filed to be in the nature of exceptions and reversed the judgment of the trial court which dismissed the third party petition.
[5] The Court of Appeal spoke in terms of "exceptions leveled at the right" of action but used the term to actually mean cause of action. Under our analysis of this feature of the case, as will be noted infra, the correct disposition of this feature of the case is to sustain the exception of no right of action.
[6] There is authority in other jurisdictions to the contrary. See People ex rel. Sanaghan v. Swalec, 22 Ill.App.2d 374, 161 N.E.2d 352 (1959); State ex rel. Williams v. Glander, 80 Ohio App. 527, 69 N.E.2d 226 (1946); General Building Contractors of New York, Inc. v. County of Oneida, 282 N.Y.S.2d 385, 54 Misc.2d 260 (1967).