[.WICKER, Judge.
This is an appeal of a district court judgment vacating a civil service board decision that mandated certain personnel assignment procedures for a municipal fire department. We affirm, although for different reasons than those assigned by the trial court.
The case originated when Michael Dunn, a fire fighter for the City of Kenner Fire Department, filed a written request for investigation with the Municipal Fire and Police Civil Service Board of the City of Kenner. He complained that the Fire Department had violated civil seiwice regulations by failing to fill the position of operator for the Fire Department’s newly-acquired Rescue 389 unit. Instead, the Fire Department made rotating assignments of drivers to the R389, most of them fire fighters on temporary assignment as acting operators. Dunn’s complaint arose because he wished to be promoted from fire fighter to operator and had seniority on the promotion list, but could not be promoted to a permanent operator position until a position became available. Dunn was concerned he would lose his chance of promotion if the then-current promotion list expired before a position became open. He also requested that the Board delay the next operator examination.
_JjAfter a hearing the Board ruled that it had jurisdiction over the subject matter of the hearing and found that the Fire Chief had not acted in good faith because he had failed to comply with the Fire Department’s policy directive of July 14, 1995, which stated that a permanent operator was to be assigned to the rescue unit. Further, the board concluded that under state law the promotional exams could not be delayed.
The Fire Department filed a petition for judicial review. Dunn intervened in the proceeding, claiming to be a necessary party. He sought affirmance of the Board’s administrative order on the basis the Board’s order had been issued “as a result of his formal request for Board investigation of certain personnel decisions by plaintiff.” The district court reversed the Board’s decision, “in particular those portions of the decision in which the Board asserts jurisdiction and mandates implementation of nondisciplinary administrative policy.” In reasons for judgment the court found the Board had exceeded the scope of its jurisdiction in granting a hearing on intervenor’s request that a new position be opened for operator of the rescue unit. The court also found no evidence the Fire Chief did not act in good faith in implementing any policy. The court concluded, “This is clearly an administrative matter and the Fire Chief should be able to implement a schedule for operation of the Rescue Truck without the Board mandating the procedure for assignment of personnel to operate equipment.”
The Board did not appeal the district court’s reversal of its ruling, but Dunn has appealed. On appeal Dunn contends the district court erred (1) in finding the board lacked jurisdiction to hear his complaint, (2) in failing to defer to the considered judgment of the board, and (3) in misconstruing the board’s order as directing the fire department to assign certain fire driver duties to personnel, “when in fact the Board was merely fulfilling its constitutional duty to protect the integrity of a merit-based classification scheme.”
In response, the Fire Department asserts Dunn has no standing to appeal the district court’s judgment because it was rendered against the Board and the Board has failed to appeal. Further, the Fire Department contends the judgment was correct.
laFACTS
At the Board hearing Fire Chief Michael Zito testified as follows: The Kenner Fire Department has 21 permanent operators— seven per shift — for six pieces of frontline equipment, consisting of five mainline fire trucks and the rescue truck. Although there are more operators per shift than pieces of *327 equipment, the department is unable to man the trucks with regular operators on each shift every day because of employee absences for Kelly days (paid compensatory time given in lieu of overtime), sick leave or vacation. There are five fire stations in the City of Kenner, so there are two extra operators. On any day they could be floated to any station to take the place of someone as a captain, or on Kelly days, vacation or sick leave. Although there is no operator specifically assigned to the rescue unit, beginning July 1, 1995 the Fire Department made it a policy to rotate operators so that everyone has a chance to become familiar with the R389.
Zito testified that all fire departments must buy fire apparatus that meets the minimal National Fire Protection Association code standards. Under the definition of NFPA Pamphlet 1901, the apparatus must have a pump and must carry a water tank with a capacity of at least 200 gallons, a hose, and ladders. Any vehicle not having those items is not considered a fire truck, even though it carries a pump. There is no standard for a rescue vehicle. The R389 does not meet the minimum standard for fire pumping apparatus, because a hose is the only item it carries that is classified as fire fighting equipment.
The R389 was first put into service by the Kenner Fire Department in May 1995. No operator was appointed to drive that vehicle specifically. Rather, the department used firefighters to drive the vehicle and, when it reached the scene of a fire, the firefighter was assigned to other duties on-scene. In contrast, fire pumper apparatus operators stay with their vehicles unless the incident warrants using them for another purpose. The department tries to keep drivers with the pumpers as much as possible.
The Fire Chief, as the appointing authority, determines the number of positions available in each class of employment. The Department’s SOP has been the same for many l4years: eight fire fighters, seven drivers, five captains, two district chiefs and one assistant chief on duty in each shift or platoon — 22 people per platoon, multiplied by three platoons, for 66 people total. Each platoon day has the same amount of personnel scheduled on the roster. The positions start off at fire fighter. The number of fire fighters is determined by the amount of money budgeted by the City of Kenner to hire fire department personnel. The next position above fire fighter is driver, of which they have seven per shift. There currently are no openings in any positions within the Kenner Fire Department. Due to a lack of manpower all the employees are cross-trained.
All leaves are authorized through the Fire Chiefs office. The employee must complete paperwork requesting the type of leave the employee wants to take. The law requires that whenever a person will be on extended medical leave of more than 30 days the department must make a provisional appointment. Kelly days are counted as authorized leave. The department has no individuals solely assigned to the rescue unit. As of July 1995, however, department mandate requires the rescue unit be operated by an operator or an acting operator. The policy about using the most senior person as a substitute operator does not apply to the rescue unit, however, but only to the pumpers. The assistant chiefs make out the schedules and they determine who will be assigned to the rescue unit. Departmental policy requires that the most senior person on the eligibility list be assigned to the pumper. A pump operator does more than a person driving the rescue unit and is required to have more specialized skills. The driver of the 389 does not have to do those things. That is why they want the more experienced driver on the pumper.
Zito stated it is irrelevant which vehicle an operator drives; what is relevant is whether there is someone on authorized leave before a substitute appointment is made. He testified if the department added a driver because of the R389, they would have to promote three people from fire fighter to operator (one for each platoon). The department then would have to hire three more fire fighters, but the budget does not include funds for additional positions.
|5Michael Dunn, the intervenor, testified the reason he was not being utilized as an *328 operator on the rescue unit is that he already is used as an operator on the pumpers. Despite his classification as a fire fighter, 95% of the time he functions as an operator rather than a fire fighter. He asserted that the department should add another operator’s position due to the additional vehicle. During the first four months of 1995 he served as an acting operator for 26 out of 31 assignments, or 85% of the time. From May 2, 1995 to the date of the civil service board hearing. (July 17, 1995), he served as an acting operator on every assignment. On none of those occasions, however, was he assigned to the R389 rescue unit. He had been the senior person on the operator eligibility list for 18 months, but the list was due to expire on July 26, 1995. Dunn was concerned that after the list expii*ed he would lose his seniority in eligibility for promotion and, if the department created a new permanent operator position for the rescue unit thereafter, he would no longer be eligible for that position. Dunn argued that R389 was a new piece of equipment, rather than a replacement for old equipment, yet the department never assigned an operator to it.
Paul Daly, state examiner for the Municipal Fire and Police Civil Service, testified as an expert witness. Daly stated that civil service law would be violated by a substitute appointment made to avoid a permanent appointment. However, the fact that an apparatus is manned by a substitute for even 75% of the time might not in itself establish intent to avoid a permanent appointment. He testified that .substitute appointments for longer than 30 days must be offered to the most senior person oh the eligibility list and must be for the duration of the leave of the person for whom the substitute appointment has been made. The appointing authority is required to notify the board of all appointments, whether they are substitute, permanent or probational and whether they involve promotion, discharge or layoff. The purpose of notification is so that the board can oversee appointments to ensure compliance with civil service law. However, it is the appointing authority which determines when a position exists for which an appointment must be made.
| c,Daly testified further that if an employee is on authorized leave, that does not create a vacancy but only an absence. A vacancy is created when an employee resigns and the appointing authority does not reduce the number of positions. Kelly days (compensatory time) are not authorized leaves, although they are authorized absences. It is the board rather than the appointing authority who decides what constitutes authorized leave. However, the board does not advise departments on their management.
RIGHT OF ACTION
The decision of the Board was directed at the Fire Department and did not affect Dunn directly. The district court reversed the Board’s ruling, but the Board failed to appeal. The Fire Department contends Dunn has no right of action to seek reversal of the district court’s judgment when the Board has failed to do so.
“The exception of no right of action calls into question whether the plaintiff has standing or interest required under the law to bring the suit.” League of Women Voters v. City of New Orleans, 381 So.2d 441, 446 (La.1980). A public right or duty may not be compelled or enforced by a private citizen, however, without a showing of a personal grievance or interest in the outcome. Id.
A plaintiff must have a real and actual interest in the action he asserts, LSA-C.C.P. art. 681. Without a showing of some special interest in the performance sought of a public board, officer or commission which is separate and distinct from the interest of the public at large, plaintiff will not be permitted to proceed.
* * * * * *
The Louisiana Constitution does not contain the “case and controversy” language of the United States Constitution. However, Article 1, Section 22 of the Louisiana Constitution of 1974 provides:
“All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his *329 person, property, reputation, or other rights.”
This provision guarantees access to the courts, but affords greater protection to fundamental interests than to those not of |7basic constitutional importance. When a claimant is asserting a right not subject to special constitutional protection, access to the courts may be restricted if there is a rational basis for that restriction. * * * Here access to the courts should be restricted to persons with a special interest apart from the interest of the general public. Interference by the judiciary at the instance of these plaintiffs would surpass the authority allocated to us in the tripartite system.
League of Women Voters v. City of New Orleans, 381 So.2d at 446-448 (La.1980).
In this case the intervenor’s objective is to force the Kenner Fire Department to add another operator position to the department, because he was the senior person on the eligibility list at the time of the civil service hearing and, thus, would be first in line to receive the appointment. While he may have an “interest” in the outcome of this appeal, the evidence failed to show the Fire Department violated either any public duty or any right specific to Dunn. He suffered no discharge, corrective or disciplinary job action by the Fire Department. Further, the Civil Service Board did not appeal. Accordingly, intervenor has no standing to proceed and the appeal will be dismissed.
Considering our conclusion, we pretermit discussion of the other issues raised. For the foregoing reasons, the appeal is dismissed.

APPEAL DISMISSED.