677 So.2d 424 (1996)
ALLIANCE FOR AFFORDABLE ENERGY and Gary L. Groesch
v.
The COUNCIL OF the CITY OF NEW ORLEANS, Suzanne Haik Terrell, Oliver M. Thomas, Troy Carter, Roy Glapion, Ellen Hazeur-Distance, Peggy Wilson and James Singleton.
No. 96-CC-0700.
Supreme Court of Louisiana.
July 2, 1996.
Motion for Contempt Denied and Rehearing Denied September 3, 1996.
*425 Maureen Blackburn Jennings, Monique Hardin, New Orleans, for Applicant.
Avis Marie Russell, City Attorney, Nolan P. Lambert, Chief Deputy City Attorney, Raju Z. Haque, Asst. City Attorney, Stephen Jay Herman, Russ Michel Herman, Herman, Herman, Katz & Cotlar, for Respondent.
Mary E. Howell, New Orleans, for Amicus Curiae League of Women Voters of New Orleans.
CALOGERO, Chief Justice.[*]
We granted writs in this case to determine whether the New Orleans City Council's Rule 45 violates Section 6-308(5)(c) of the city's Home Rule Charter. For the reasons set forth below, we hold that Rule 45 does not violate the Charter. And because we also determine that the district court properly found that the Council complied with Rule 45, the stay regarding the City Council's approval of utility consultant contracts, which we ordered upon granting the writ in this case, is lifted, and the judgment of the district court refusing to enjoin the Council from executing professional service contracts with utility consultants is affirmed.
In 1994, New Orleans Mayor Marc Morial appointed the Mayor's Charter Revision Advisory Committee to assist in revising the Charter. The revised Charter was approved by the voters of the City of New Orleans in November 1995 and became effective on January 1, 1996.
One of the revised sections of the Charter is Section 6-308(5) which provides for a competitive selection process for the award of professional service contracts by both the mayor and the council. As reflected in the record and brief, this Charter amendment was responsive in large part to the urging of several civic groups during the city's mayoral and councilmanic elections of 1993 that political patronage in the awarding of contracts for professional services be minimized or restricted. Minimizing or restricting patronage was also the intent of some, if not a *426 majority, of the members of the Mayor's Charter Revision Advisory Committee when they recommended the revisions to Section 6-308(5). This was also a reason why some groups within the city recommended voter adoption of the Charter amendments.
It is on Section 6-308(5)(c) that this opinion focuses. Section 6-308(5) provides:
Section 6-308. Contracts.
* * * * * *
(5)(a) Except in the purchase of unique or noncompetitive articles, competitive bids shall be secured before any purchase, by contract or otherwise, is made or before any contract is awarded for construction, alteration, repair or maintenance or for the rendering of any services to the City, other than professional services ...
(b) Contracts for professional services administered by the offices, departments, boards, and other agencies of the Executive Branch shall be awarded on the basis of a competitive selection process which shall be established by executive order of the Mayor.
(c) Contracts for professional services administered by the Council, pursuant to its Charter functions, legislative authority and responsibilities, and regulatory authority and responsibilities, shall be awarded on the basis of a competitive selection process which shall be established by rule of the Council. Such contracts shall be signed by the Council president upon authorization by Motion adopted by a majority of the entire membership of the Council, except that pursuant to Section 4-403(2), contracts to employ special counsel shall require a two-thirds vote of the Council's entire membership. The Council rule may except contracts executed solely to assist the office of an individual councilmember.
(d) ... The Executive Branch or Council competitive selection processes may include a threshold amount below which the competitive selection process shall not be required. The amount of the threshold shall be established by ordinance.
Thereafter, in accordance with Section 6-308(c) the City Council adopted Rule 45. "Contracts for professional services to be administered by the Council shall include but not be limited to the following professions: Accountants, Appraisers, Architects, Auditors, Attorneys, Economists, Management Consultants, Public Relations/Media Consultants, Real Estate Consultants, Telecommunications Consultants, Utilities Regulatory Consultants, Consultants with expertise in a field as required by the Council." Rule 45 also provides, in pertinent part:
Exceptions from this Competitive Selection process shall be made for the following:
1. Professional service contracts for an individual Councilmember's Office.
2. Annual Audit, for which requests for qualifications shall be sent to "Big Six" accounting firms[2] with local offices.
3. Emergency situations in which a majority of the entire membership of the Council determines that there is an immediate need for a specific contract and that there is not sufficient time to go through the Competitive Selection Process.
4. Any contracts in existence prior to January 1, 1996 for:
a) Renewal or extension of the contract, when continuity of service is essential.
b) Amendments to such contracts that may expand but do not materially alter the scope of services and for which specialized and institutional experience and knowledge are required.
The Council, by majority vote of its entire membership, shall determine which contracts are eligible for exemption under this paragraph.
At the February 15th Council meeting, Council members Singleton and Terrell introduced Motion R-96-69 which sought to except from the competitive selection process *427 contracts with the firms of (1) Verner, Liipfert, McPherson, Bernhard and Hand, Chartered; (2) Carter and Cates in association with Walter J. Wilkerson, Esquire; (3) Washington Utility Group; and (4) Legend Consulting Group Limited. More specifically, that motion stated that the contracts with the utility consultants are "deemed as exceptions [sic] to the Competitive Selection Process contained in Rule 45 of the Council's Rules as Renewals or Extensions of contracts in existence prior to January 1, 1996 when continuity of service is essential." The council deferred consideration of the motion until the next scheduled meeting.
On February 16th, plaintiffs, Alliance for Affordable Energy and Gary L. Groesch ("the Alliance"), filed suit in the Civil District Court seeking a preliminary and permanent injunction which would enjoin and prohibit defendants from executing professional service contracts not authorized by the Charter of the City of New Orleans. The Alliance alleged in its first amended petition that "Rule 45 is contrary to Section 6-308(5) of the Home Rule Charter" insofar as it:
(1) does not establish a system by which professional service contracts shall be awarded on the basis of a competitive selection process;
(2) provides four [sic] exceptions to the competitive selection process, in addition to the one authorized exception which allows for professional services contracts for individual councilmembers.
The Alliance initially did not seek a temporary restraining order because consideration of the utility consultant contracts had been deferred until the Council's next meeting, which was scheduled for March 7, 1996. However, upon learning of the passage of Motion M-96-66 regarding the award of the 1995 audit contract at the council's February 15th meeting, the Alliance amended its petition and filed a Motion for Temporary Restraining Order seeking to enjoin the defendants from executing professional services contracts.
After hearing argument from the parties, the district court judge denied Alliance's Motion for Temporary Restraining Order and granted defendants' Motion for Continuance. A hearing on the preliminary injunction was thereupon scheduled for February 23rd. It was then reset for March 15th. Plaintiffs filed a writ application in the Fourth Circuit Court of Appeal seeking expedited consideration of the writ and requesting that the court of appeal issue a restraining order and vacate the district court's orders. The Fourth Circuit granted the writ and ordered as follows:
With respect to the utility consultant contracts, the trial court is Ordered either to grant a Temporary Restraining Order or to conduct a hearing on the motion for a Preliminary Injunction prior to the March 7th City Council meeting.
With respect to the execution of the audit contracts, the trial court is Ordered to issue a Temporary Restraining Order pursuant to C.C.P. art. 3610, and to conduct a hearing coincident with the above hearing to determine whether the contracts were lawfully awarded.
The trial court may postpone its hearing provided the City Council postpones any further action on either set of contracts.
On March 4, 1996, the district court judge issued a temporary restraining order, prohibiting the Council from signing the audit contract. On March 15, 1996, after hearing oral argument on the Motion for Preliminary Injunction, the district court denied the motion with respect to both categories of contracts and dissolved the temporary restraining order which had prohibited the Council from signing the audit contract.
On March 20, 1996, the Alliance filed its second emergency writ application in the court of appeal, requesting an order directing the trial judge to enjoin the Council from signing both the audit contract and professional service contracts. Unbeknown to plaintiffs at the time it filed its March 20, 1996, writ application, the Council President, unrestrained by court order, had already signed the audit contract. The court of appeal denied plaintiffs' writ application.[3]
*428 Plaintiffs thereupon filed an application with this Court. We entered a stay order: "Consideration of professional service contracts and utility contracts by the ... City Council [are] stayed pending further orders of this Court." Thereafter, the Council filed a Motion to Clarify the Stay Order, and in the Alternative, to Lift it. This Court took the following action:
The City Council's motion to lift this court's stay order of March 21, 1996 is granted in part. Considering that no court has yet ruled that Council Rule 45 violated the New Orleans Home Rule Charter, an issue which is set for oral argument in this court ... the court recalls its order staying actions on professional service contracts under Council Rule 45, except that [the] portion of the March 21 order staying approval of utility consultant contracts remains in effect pending further orders of the court.
Before addressing the merits, this Court, as a threshold matter, must determine whether the Alliance has standing to bring this action. See Louisiana Associated General Contractors, Inc. v. State, 95-2105 (La. 3/8/96), 669 So.2d 1185, 1190 (La.1996). Stated differently, are plaintiffs in the class of persons to whom the law affords this cause of action. Louisiana Associated General Contractors Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1357 (La.1991).
Louisiana jurisprudence recognizes the right of a taxpayer to enjoin unlawful action by a public body. Id. Under our law, a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode which would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941). "The fact that the taxpayer's interest may be small and insusceptible of accurate determination is not sufficient to deprive him of the right." Id.
This Court in League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441 (La.1980), further refined this standard and held that "a taxpayer will not be allowed to compel the performance of a public duty by mandamus absent a showing of some special interest which is separate and distinct from the interest of the public at large." Id. at 447. On the other hand, a citizen seeking to restrain unlawful action by a public entity, Stewart, 5 So.2d at 531, is not required to demonstrate a special or particular interest distinct from the public at large. Id. Consequently, taxpayer plaintiffs seeking to restrain action by a public body are afforded a right of action upon a mere showing of an interest, however small and indeterminable. See Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963); Stewart, 5 So.2d at 531.
The League of Women Voters plaintiffs, the League and two taxpayers, tried to obtain an order requiring defendants to carry out certain governmental functions. Id. at 446. This Court maintained defendants' exception of no cause of action, reasoning that plaintiffs were not seeking to restrain an increase in their tax burden, but were seeking to compel action by public officials which would increase taxes. League of Women Voters, 381 So.2d at 447. Because plaintiffs were seeking to compel the defendants to perform certain functions, plaintiffs had to show that they had "some special interest which is separate and distinct" from the general public. Plaintiffs' general allegations in League of Women Voters, however, of jeopardy to their interest in receiving sufficient police, fire, and flood protection services, were not peculiar to them, but were common to the public at large. Id. Hence, the defendants' exception of no cause of action was maintained because defendants failed to demonstrate a special or particular interest distinct from the public when defendants were seeking in that case to compel government action.
Conversely, the contractor's association in Louisiana Associated General Contractors, 586 So.2d at 1358, brought suit seeking an *429 injunction which would prohibit the Calcasieu School Board from requiring that its contracts contain prevailing wage provisions. Interestingly, the court noted that although the plaintiffs alleged and proved that they are residents and taxpayers of Calcasieu Parish contributing to the fund used to pay for the projects, the facts did not sufficiently prove the plaintiffs' allegation that the Board's action would, with certainty, increase their tax burden. Id. The court recited, however, that proof of an increased tax burden is not the only way a taxpaying citizen may seek judicial authority to restrain a public body from alleged unlawful action. Id.
Instead, this Court held that the individual contractors had standing based on their interest in restraining the Board's action because the record showed that the plaintiff contractors had submitted bids and desired to be awarded contracts on the projects which were subject to the School Board's prevailing wage requirements. Id. "No one could have a more personal stake in the legality of these public bid contracts than those bidding on the contracts." Id.
The Court also found that the plaintiff association had a sufficient interest in bringing this suit. Id. The LAGC is composed of Louisiana contractors who engage in the construction of public works projects and thus the LAGC is "keenly interested" in maintaining the integrity of the public bid process in Louisiana. Id.
Applying the foregoing to the case at hand, we hold that plaintiffs have standing to bring this lawsuit. The action was instituted by plaintiffs' Petition for Preliminary and Permanent Injunction which sought to prohibit defendants from entering into professional service contracts with the utility consultants in violation of Section 308(5)(c) of the Charter. Because plaintiffs seek to restrain the City Council from entering into certain contracts allegedly through an illegal process, plaintiffs are not required under League of Women Voters and its progeny to demonstrate a special or particular interest. Rather, plaintiffs are afforded a right of action upon a mere showing of an interest, however small and indeterminable. See League of Women Voters, 381 So.2d at 447.
Plaintiffs, as citizens and taxpayers of the city of New Orleans, are concerned about the utility consultant contracts that the City Council seeks to execute allegedly in violation of the Charter. The money budgeted for these contracts does indeed constitute, as the Alliance alleged, a "burden on the tax base and therefore [promises] harm to the taxpayers of New Orleans."
Moreover, defendants contend that the Alliance lacks standing to bring this action because plaintiffs' stated interest is simply in the health and welfare of the residents of Orleans Parish. Defendants' argument that this interest is insufficient is without merit. As noted above, plaintiffs are not required to demonstrate a special interest, which is distinct from the public at large because plaintiffs are not seeking to compel government action. Plaintiffs have demonstrated a sufficient interest in bringing this action.
Having disposed of this threshold issue, we turn to the merits of this case. The plaintiffs accurately assess that the main question in this case is "whether the Council's Rule 45 violates the Charter's requirement of a competitive selection process." As noted above, Section 6-308(5)(c) of the Charter provides:
(c) Contracts for professional services administered by the Council, pursuant to its Charter functions, legislative authority and responsibilities, and regulatory authority and responsibilities, shall be awarded on the basis of a competitive selection process which shall be established by rule of the Council. Such contracts shall be signed by the Council president upon authorization by Motion adopted by a majority of the entire membership of the Council, except that pursuant to Section 4-403(2), contracts to employ special counsel shall require a two-thirds vote of the Council's entire membership. The Council rule may except contracts executed solely to assist the office of an individual councilmember.
(Emphasis added).
Alliance argues that the Charter provides two and only two valid exceptions to the competitive selection process, an exception for "contracts executed solely to assist the *430 office of an individual councilmember" (Section 6-308(5)(c)) and one allowing by ordinance the establishment of a minimum monetary amount for the mandated competitive selection process (Section 6-308(5)(d)).[4]
The Council, on the other hand, contends that there are no Charter limits on its authority other than that it must adopt a competitive selection process, by implication one that must of necessity be reasonable, and that it is to do so by "rule" to be established by the Council. The Council contends that it has complied with the Charter in this respect. Regarding the competitive selection process for securing professional services, the Council adopted Rule 45 on February 15, 1996.[5] It "creates a Selection Review Committee, provides for the issuance of a Request for Proposals as services become needed, and outlines criteria to be considered in the awarding of contracts with professional service providers." Rule 45, the Council contends, is clearly reasonable, it adopts a competitive selection process by rule and it thus comports with the Home Rule Charter.
As indicated earlier, there are four recited exceptions within Rule 45. First, the Council exercised the express permissive authority granted in the Charter and created an exception for contracts for individual councilmember's respective offices. Second, the Council excepted from the competitive selection process, consultant contracts for the city's annual audit, restricting the applicants to the "Big Six" national accounting firms with local offices. The apparent reason for this was to assure that for this important audit function the city would engage an accounting firm sufficiently large, and with a degree of permanence, in the accounting field.[6] Third, the Council created an exception for emergency situationsan immediate need for a specific contract when there is not sufficient time to go through the competitive selection process, and then only with a minimum of a four person council majority vote.
The fourth express exception in Rule 45 is the one involved in this case. Because the Council had in existence contracts with several consultants on the January 1, 1996 effective date of the Charter amendments, it determined that all such contracts, for renewal or extension, should be excepted from the competitive selection process "when continuity of service is essential" to the city's best interest.[7]
The district court did not address whether Rule 45 offends the Home Rule Charter but rather applied Rule 45 to the utility consultant contracts and found the Council's decision, regarding continuity of service being essential, to be a reasonable one designed to facilitate the Council's regulatory duty.
Alliance's main argument in this Court is not that the rule is unreasonable, but that three of the four exceptions from the process are not authorized by the Charter, as a consequence of which the rule violates the relevant section of the Charter. Notwithstanding the express authority granted to the *431 Council to adopt the competitive selection process by rule of that body, the Alliance claims that the Charter requires that the process to be established by the Council contain only the exception regarding contracts for individual councilmembers' offices and one other (for contracts below the $15,000 threshold).
There are two questions for this Court to answer. In adopting the rule as the Charter commands, is the Council prohibited from excepting from the competitive selection process any and all consulting contracts except those executed for an individual councilmember's office?[8] Second, if the Council is not so prohibited, then is Rule 45(4)[9] a reasonable exercise of the Council's Charter authority and in keeping with the intent of the revision to Section 6-308(5)(c)?
1. Does the Charter Prohibit all Exceptions but the One Expressly Provided for in Section 3-608(5)(c)?
This Court is not persuaded by plaintiffs' argument that the Charter's language should be narrowly construed to allow the Council to establish only the procedures by which the competitive selection process should operate, and not to allow the Council any authority at all to define reasonable exceptions, that is to prescribe the parameters of the process. Our view in this regard is guided by several considerations.
Initially, we emphasize that the Charter does not expressly state that the Council rule shall bear no exception other than that permitted for a councilmember's office. In fact, the Charter does not mandate that there be no other exception. It simply provides that "[t]he Council rule may except" individual councilmember contracts. Had the drafters intended that this be the only exception allowed, then they surely would have included restrictive language like "may only except," "shall except only," or "no other exceptions will be allowed."
Plaintiffs, have a contrary argument that is not without some appeal. They contend that inclusion of one exception implies that there shall be no others, "expressio unius est exclusio ulterius."
At a minimum, then, there is ambiguity regarding whether the exception for contracts for individual councilmember's offices is the only exception permitted by the Charter, for Section 6-308(5)(c) is susceptible of at least two interpretations. On the one hand, there is the argument that the only exception is the one provided by the Charter and that every other contract involving professional services must be subject to a competitive selection process every time a pre-January 1, 1996 contract is renewed or extended. On the other hand, there is the argument that the Charter gives the Council the authority and duty to create a competitive selection process on or after January 1, 1996, generally applicable, but with the right to except from that process pre-existing contracts and their amendments or extensions, in circumstances where reason, necessity, and the city's best interest dictate that they should. We find the latter argument the more plausible one. "When a law is susceptible of two or more interpretations, that which affords a reasonable and practical effect to the entire act [the Charter in this case] is to be preferred over one which renders part thereof ridiculous or nugatory." Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La. App. 1st Cir.1984) (citing Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980)).
In discerning the intent of the citizens who adopted the Charter amendment, just like when discerning the intent of the citizens of Louisiana in adopting a constitutional amendment, we often look to the intent of the redactors. Zapata Gulf Marine Operators v. Tax Commission, 554 So.2d 1253, 1258 (La.App. 1st Cir.1989). Here, we have a Council that has in existence, relevant to this case, contracts with utility consultants of at least several years duration, with the consultants engaged in multiple lawsuits and/or *432 rate disputes.[10] The Council, which approved the proposed revision, could not have intended that it should be required to re-negotiate contract extensions or amendments on and after January 1, 1996, for existing professional services contracts, where continuity of service is essential to the city's best interest and where specialized and institutional experience and knowledge are required. Likewise, the voters of New Orleans who voted on the revision did not likely intend that there be no exceptions to the selection process, not even those dictated by reason and necessity.
Conversely, it is equally unlikely that the citizens who voted favorably on the revision believed that there would be no application of the new process to any professional under contract on January 1, 1996 for any future professional services required of such professional on any and all, even new, matters.
We conclude, responsive to the first question herein, that the only limitation on the Council's authority to establish a competitive selection process, "by rule of the Council," is that the rule must be reasonable and necessary to further the legitimate interest of the city and its citizens, and not unduly at variance with the purpose of the Charter revision, which was to minimize or restrict political patronage in the awarding of consultant contracts. Weighing the competing Charter provisions and necessary implications, we hold that the relevant Charter revision was not intended to and does not prohibit the Council from excepting consultant contracts in justifiable, sufficiently discrete, and reasonably necessary circumstances.
2. Is Rule 45(4) Justifiable, Sufficiently Discrete, and Reasonably Necessary to Further the Legitimate Interest of the City and not Unduly at Variance with the Charter's Purpose to Minimize or Restrict Political Patronage?

The portion of Rule 45 which is in controversy in this litigation is Rule 45(4). We will therefore restrict our discussion to that exception, that is, any contracts in existence prior to January 1, 1996 for renewal or extension of a contract when continuity of service is essential.[11]
*433 Rule 45(4) provides an exception for renewal or extension of contracts in existence prior to January 1, 1996, when continuity of service is essential and where specialized, institutional experience and knowledge are required. That this exception is reasonable and necessary and in the best interest of the city and its citizens is self-evident.
Can any reasonable institution conceivably choose to require replacing professional service contractors or consultants in situations where ongoing representation or work in pending controversies of any magnitude necessitates an amendment or extension of contract, especially where specialized, institutional experience and knowledge are required. The answer is obviously no.
But what about the competing concern, the citizens' apparent interest in passing Charter revisions to reduce or minimize the influence of patronage politics on the award of professional service contracts. First of all, the new compulsory competitive selection process is in place and serves the purpose well for it clearly applies to all new professional services contracts entered into on January 1, 1996, and thereafter. Patronage politics, contract awards without competition, will be increasingly and substantially reduced over time. It is noteworthy to observe, for example, that the Council's Competitive Selection Committee held a meeting on April 25, 1996, to discuss the need for telecommunications consultants to advise the city with respect to fiber optics and cable television technology.
Furthermore, with respect to contracts entered and consultants chosen before January 1, 1996, not every need for consultant services after January 1, 1996, will necessarily be the subject of a contract renewal or extension to an existing contract, only those where continuity of service is essential. As an example, (and we refer here to the utility consultant contracts even though we are here discussing professional service contracts generally utilities regulation being the principal source of professional services contracts and consultant selection by the Council), the Council might consider continuity of service essential in a pending rate case, pending proceeding before the Council, pending litigation involving the Council before an administrative hearing officer, federal regulatory agency or a court. On the other hand, if the matter arising after January 1, 1996 involves none of the foregoing, but is perhaps a newly instituted rate case, a new free-standing lawsuit, or a new matter, the Council cannot arbitrarily bypass the newly instituted competitive selection process and execute contract renewals or extensions, even if such matters involve the utility consultants field.[12]
Rule 45(4), we conclude, is justifiable, sufficiently discrete, and reasonably necessary to further the interest of the city. Furthermore, Rule 45(4) is not unduly at variance with the Charter's purpose of minimizing or restricting political patronage in the selection of professional consultants.
Having determined that the Charter does not prohibit all exceptions (but for contracts to assist the office of an individual councilmember) and that the Council's Rule 45(4), besides being authorized, is justifiable, sufficiently discrete, and reasonably necessary, and not unduly at variance with the purpose behind the revision, we must now decide whether the district court erred when he found that the Council properly applied Rule 45(4) in this case; when he concluded that the Council properly passed Motion R-96-69 to except from the competitive selection process contract extensions with the firms of (1) Verner, Liipfert, McPherson, Bernhard and Hand, Chartered; (2) Carter and Cates in association with Walter J. Wilkerson, Esquire; (3) Washington Utility Group; and (4) Legend Consulting Group Limited; and when he refused to enjoin the Council from executing the utility consultant contract renewals, *434 extensions and or amendments in this case.
The proper standard of review mandates that the Council's decision be upheld unless it is arbitrary and capricious. "In reviewing the decisions of public bodies ..., the courts will not interfere with the functions of these bodies in the exercise of the discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily." Coliseum Square Association v. New Orleans, 544 So.2d 351, 360 (La.1989) (citing Caz-Perk Realty, Inc. v. Police Jury of Parish of East Baton Rouge, 207 La. 796, 22 So.2d 121 (1945).
At the hearing on the preliminary injunction held on March 15, 1996, plaintiffs had an opportunity to present their case. The district judge then had to decide, among other things, whether the Council properly applied Rule 45(4) when it passed Motion R-96-69 to facilitate certain contract renewals and extensions without compliance with the competitive selection process.
The district judge decided that the Council had properly applied Rule 45(4). In his oral reasons, he emphasized the Council's duty to regulate public utilities operating in the city, the need for the city to compete in financial resources and specialized knowledge with the utility companies' attorneys, consultants, and experts, the importance of and essential need for continuity of service and the fact that the contracts to be extended or renewed were in place before January 1, 1996.
We find, upon review of the law and the evidence, that the district court did not err in his decision denying the plaintiffs request for an injunction. For the foregoing reasons, the judgment of the district court refusing to enjoin the New Orleans City Council is affirmed.
DISTRICT COURT JUDGMENT AFFIRMED.
JOHNSON, J., concurs and assigns reasons.
VICTORY and KIMBALL, JJ., dissent.
WATSON, J., dissents and will assign reasons.
JOHNSON, Justice, concurring.
Plaintiffs, the Alliance for Affordable Energy and Gary L. Groesh, filed suit in Civil District Court requesting a preliminary injunction and a permanent injunction which sought to enjoin defendants from executing service contracts pursuant to Rule 45 which plaintiffs alleged were unauthorized by Section 6-308(5) of the Home Rule Charter.
Even if these plaintiffs would have standing to sue (and I disagree with the majority opinion that finds standing), to obtain a preliminary injunction, the movers must prove that they will suffer irreparable injury, loss, or damage, that the movers are entitled to the relief sought as a matter of law, and the movers must make a prima facie showing that they will prevail on the merits. General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La.1979); La.Code Civ.P. arts. 3601-02.
Here, the trial judge denied plaintiffs' request for a preliminary injunction and the court of appeal denied writs. In seeking relief from this court, plaintiffs requested a stay which this court granted on April 25, 1996.[1] In effect, plaintiffs temporarily secured the sought after relief which they were not entitled to obtain; that is, defendants were not permitted to execute the contracts at issue. Plaintiffs were successful in obtaining the stay on mere allegations which were rejected by the trial judge after a hearing. Moreover, plaintiffs obtained the stay without any showing of potential irreparable harm or that they would be successful on the merits. On the other hand, defendants were precluded from executing contracts which potentially interrupted the continued work on numerous projects, pending the determination of the legality of Rule 45. This interruption of the activities of a governmental agency should not be countenanced absent the required showing by the mover requesting the relief.
MARCUS, Justice (dissenting from denial of rehearing).
*435 I would grant the application for rehearing. Section 6-308(5)(c) of the charter provides that all contracts for professional services "shall be awarded on the basis of a competitive selection process which shall be established by rule of the Council." This provision mandates that the council adopt a rule to implement the competitive selection process. It does not authorize the council to create exceptions to the competitive selection process. The sole exception to the competitive selection process provided by § 6-308(5)(c) is for "contracts executed solely to assist the office of an individual councilmember." Since Council Rule 45 attempts to exempt contracts from the competitive selection process on the basis of continuity of service, it is contrary to the mandatory language of § 6-308(5)(c). While I agree that continuity of service may be used as an evaluation criterion by the selection review committee, as provided in Rule 45, I believe it cannot be used as an exception to the competitive selection process. Otherwise, as stated in applicant's brief, the "exceptions will swallow the rule of competitive selection." Accordingly, I dissent from the denial of rehearing.
NOTES
[*] Bleich, J., not on panel. Rule IV, Part 2, § 3.
[2] The nation's "Big Six" accounting firms, each having a New Orleans office, are the following:

1) Arthur Andersen and Company
2) Coopers and Lybrand
3) Deloitte and Touche
4) Ernst and Young
5) KPMG Peat Marwick
6) Price Waterhouse.
[3] This opinion need not consider plaintiffs' effort to bar the audit contract because that contract was signed by the Council President after the district court dissolved the temporary restraining order and denied plaintiffs' Motion for Permanent Injunction, but before plaintiffs filed an application with the court of appeal. Hence, plaintiffs filed a Motion for Partial Dismissal upon learning that the Council President had already signed the audit contract. Plaintiffs' motion was granted.
[4] This minimum level has by ordinance been set at $15,000.00.
[5] Rule 45 sets forth the following procedure for use with the competitive selection process:

1. Upon determination by a majority vote of the entire membership of the City Council that the services of a professional are needed, a Request for Qualifications or Request for Proposals... shall be issued ...
2. The Request for Qualifications or Request for Proposals shall be published at least three times in a 10 day period in the Official Journal by the Clerk of Council....
3. Interested professionals who respond by the deadline date shall be evaluated by the Selection Review Committee....
4. The committee shall establish the appropriate evaluation criteria, which may include but not be limited to the following: (a) training and experience with type of task required; (b) appropriateness of plan submitted; (c) capability of contractor to provide staffing and support; (d) knowledge of local conditions; (e) ability to provide the work in the time period required, as evidenced by past performance and current workload; ... (h) the need for continuity of services and/or specialized and institutional experience and knowledge.
[6] In all events, the Council's audit contract is no longer involved in this litigation. (See footnote 3). There is thus no need for this Court to pass on Rule 45(2).
[7] Rule 45(4)(b) emphasizes required specialized and institutional experience and knowledge, for amendments expanding but not materially altering the scope of services in those contracts where continuity of service is essential.
[8] Although plaintiffs regard the threshold amount as an exception, it seems to be simply a charter prescribed limitation on the application of the process.
[9] The 4th exception listed in Rule 45 is the relevant portion of the rule involved in this litigation.
[10] Besides the Council's own regulation of NOPSI's natural gas and electric system and LP & L's electric system, there are currently pending proceedings before the Council, identified by 10 Council resolutions, dealing with costs, service and equity issues, gas service regulations, jurisdictional electric rate schedules, prudence settlement regarding over earnings in a current period, fuel adjustment billing review, fuel adjustment billings and an assortment of other utility regulatory issues.

In addition to the foregoing, the Council President's affidavit and the Council's brief point to multiple instances of distinct and separate proceedings in which consultants are involved. These require appearances in various forums on multiple issues.
Federal Energy Regulatory Commission (FERC):
LPSC "ERS" Complaint; FERC Docket No. EL94-13-000
A FERC administrative law judge denied a request by the LPSC and agreed with New Orleans that NOPSI should not pay refunds to LP & L. The matter is now pending before the full Commission.
SERI's Application for an Increase in Rates FERC Docket No. ER95-1042
On July 3, 1995, the FERC issued an order suspending the rate increase for five months, requiring an administrative law judge to establish a procedural schedule and setting the matter for hearing. The matter is now in briefing stage.
Securities Exchange Commission (SEC):
Administrative Reform of PUHCA. The SEC issued a staff report and several rule makings intended to modify PUHCA. The SEC's rule making, if finalized, would provide Entergy with much greater flexibility and fewer consumer safeguards. The Council is actively participating in this proceeding and has intervened and filed comments opposing the proposed rules.
Least Cost Planning Docket UD9202B/Resolution R-96-14
On January 11, 1996, LP & L submitted a settlement offer in this pending matter. Resolution R-96-58 established the administrative hearing and the procedural process for all parties to consider the offer. Discovery has already commenced with testimony due March 26, 1996 and an hearing to commence on April 30, 1996.
[11] In the first exception, Rule 45(1), contracts for councilmembers' offices are expressly excepted in the Home Rule Charter, and Rule 45(2) which restricts the annual audit to the Big 6 accounting firms is no longer at issue in this litigation. Rule 45(3), the emergency exception, in which a majority of the entire membership of the Council determines that there is an immediate need for a specific contract and that there is not sufficient time to go through the competitive selection process, is also not involved in this litigation, although it would seem evident that such a provision is necessary.
[12] When a pre-January 1, 1996 consultant is subjected to the competitive selection process on or after January 1, 1996, the consultant will of course be able to bolster his own credentials by emphasizing his institutional experience and knowledge. In fact, Rule 45 suggests that the Council's Competitive Selection Review Committee take into account "the need for ... specialized and institutional experience and knowledge," when establishing the appropriate evaluation criteria for competing applicants.
[1] Justices Calogero, Watson, and Johnson voted to lift the stay "[u]nless and until this court were to decide that Council Rule 45 violated the City's Home Rule Charter, [and] ... would permit the enforcement of Rule 45.